FIRST NATIONAL BANK OF CHAMPLAIN, N. Y., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 39782.   Promulgated November 24, 1930.

*R. H. Crook*, Esq., for the petitioner.
*W. F. Gibbs*, Esq., for the respondent.

**420**

OPINION.

MATTHEWS: This case arises under the Revenue Act of 1926. The respondent contends that under section 203(b)2, no gain or loss is recognized on the exchange of bonds for preferred stock. The petitioner contends that the provisions of the act applicable to the situation are sections 202(c), 202(d), and 203(b)1. The provisions relied on by petitioner and respondent, and other pertinent portions of sections 202 and 203, read as follows:

SEC. 202. (a) Except as hereinafter provided in this section, the gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the basis provided in subdivision (a) or (b) of section 204, and the loss shall be the excess of such basis over the amount realized.

*     *     *     *     *     *     *

(c) The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received.

(d) In the case of a sale or exchange, the extent to which the gain or loss determined under this section shall be recognized for the purposes of this title, shall be determined under the provisions of section 203.

*     *     *     *     *     *     *

SEC. 203. (a) Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 202, shall be recognized, except as hereinafter provided in this section.

(b)(1) No gain or loss shall be recognized if property held for productive use in trade or business or for investment (not including stock in trade or other property held primarily for sale, nor stocks, bonds, notes, choses in action, certificates of trust or beneficial interest, or other securities or evidences of indebtedness or interest) is exchanged solely for property of a like kind to be held either for productive use in trade or business or for investment, or if common stock in a corporation is exchanged solely for common stock in the same corporation, or if preferred stock in a corporation is exchanged solely for preferred stock in the same corporation.

(2) No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

(f) If an exchange would be within the provisions of paragraph (1), (2), (3), or (4) of subdivision (b) if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain or loss, but also of other property or money, then no loss from the exchange shall be recognized.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

(h) As used in this section and sections 201 and 204—

(1) The term "reorganization" means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (C) a recapitalization, or (D) a mere change in identity, form, or place of organization, however effected.

(2) The term "a party to a reorganization" includes a corporation resulting from a reorganization and includes both corporations in the case of an acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

If subdivision (b)(1) of section 203 stood alone, there would seem to be no question that it would control in this case and that the exception therein contained with respect to stocks, bonds, notes, etc., an exception upon which petitioner relies, would take the present case out of the category in which no gain or loss shall be recognized and allow the computation of gain or loss in accordance with section 202. But paragraph 2 of section 203(b) and the subsequent subdivisions of section 203, are intended to cover exchanges in the various cases of corporate reorganization which may arise, and they must, therefore, be considered, inasmuch as the plan is referred to in the stipulation as a plan of reorganization, and in the plan itself, the transaction is referred to as a reorganization.

It must be determined, however, whether as a matter of law what was accomplished was a reorganization within the meaning of sec-

tion 203 (h) (1), and if so, whether the Riordon Pulp & Paper Co. and the International Paper Co. are parties to a reorganization within the meaning of section 203 (b) (2), and whether the exchange is one in which the loss can not be recognized.

The plan, which is set forth in our findings of fact, provides in effect for the acquisition by the International Paper Co. of all the properties formerly owned by the Riordon Pulp & Paper Co. and its successor, the Riordon Co., held by the two bondholders' committees, in exchange for its 7 per cent preferred stock and 6 per cent bonds, title to the properties to be taken and held in the name of a Canadian corporation, which was organized for that purpose, all of whose stock was to be owned by the International Paper Co. This is the acquisition by one corporation of all of the properties of another corporation, and comes squarely within the language used in section 203 (h) 1: " The term ' reorganization ' means (A) a merger or consolidation (including the acquisition by one corporation of * * * substantially all the properties of another corporation) * * *."

We are not advised as to the date or manner in which the Riordon Co., Ltd., became the successor of the Riordon Pulp & Paper Co., Ltd. We do not think this is material, however, as the plan discloses that all the property which secured the 6 per cent gold bonds of the Riordon Pulp & Paper Co., Ltd., as well as the first mortgage debentures of the Riordon Pulp & Paper Co., Ltd., was purchased by the 6 per cent bondholders' committee at the foreclosure and liquidation sale of the assets of the Riordon Co., Ltd. We conclude, therefore, that the Riordon Co., Ltd., had, at the time it became successor of the Riordon Pulp & Paper Co., Ltd., acquired all the properties of the Riordon Pulp & Paper Co., Ltd., and assumed the bonds which were secured on such properties, and that it was not able to meet either its own obligations on the 8 per cent first mortgage and refunding gold bonds of the Riordon Co., Ltd., or the obligations on the bonds of the Riordon Pulp & Paper Co., Ltd., which it had assumed. Each bondholders' committee, therefore, purchased the properties on which its bonds had priority over the other issue, and thus the 6 per cent bondholders' committee acquired the property formerly owned by the Riordon Pulp & Paper Co., Ltd. Under the plan adopted by the 6 per cent bondholders' committee, securities of the Riordon Pulp & Paper Co., Ltd., and the properties formerly owned by that company are dealt with, while under the plan adopted by the 8 per cent bondholders' committee, the securities of the Riordon Co., Ltd., and the property of that company which secured such bonds are dealt with. Both plans form a part of the general reorganization plan, but we are concerned with the plan adopted by the 6 per cent bondholders of the Riordon Pulp & Paper Co., Ltd.

We do not think that the intervention of the Canadian corporation to hold title to the properties is material, but even if we considered that there were two simultaneous transactions, the acquisition of the properties of the Riordon Pulp & Paper Co. by the Canadian corporation, and the acquisition of all the stock of the Canadian corporation by the International Paper Co., it would still be a reorganization, because both transactions fall within (A), which also includes cases where one corporation acquires all the stock of another corporation. This then was a reorganization within the meaning of the statute.

We have next to determine whether the Riordon Pulp & Paper Co., whose bonds were exchanged, and the International Paper Co. whose preferred stock was received in exchange, are parties to the reorganization. The term "a party to a reorganization" is defined in section 203 (h) (2).

We are of the opinion that the Riordon Pulp & Paper Co. whose bonds petitioner exchanged, is a party to the reorganization. Any other interpretation would stultify the statute. The fact that the properties of the company had been sold under foreclosure before the plan became effective, does not alter the fundamental fact that it is being reorganized and that its assets and liabilities and its security-holders are being dealt with under the reorganization plan. In this case, the bondholders, upon foreclosure, had become the owners of all the assets of the corporation, subject to the remaining liabilities, and there was no equity left in the stockholders. The bondholders, therefore, were the only ones who could enter into a plan of reorganization of the corporation.

It will be observed that paragraph (2) of subdivision (h) of section 203, does not, like paragraph (1), which defines the term "reorganization," employ the word "means," but says that the term "a party to the reorganization *includes*," thereby merely extending the definition to certain other corporations than the one reorganized. The Canadian corporation is a corporation "resulting from a reorganization" and comes specifically within the terms of the statute. Both the Canadian corporation and the International Paper Co., whose securities were issued in exchange, fall within the second half of the definition which provides that the term "includes both corporations in the case of the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation," since here the International Paper Co. acquired all of the capital stock of the Canadian corporation.

The Riordon Pulp & Paper Co. and the International Paper Co. are, therefore, corporations which are parties to a reorganization,

Does the statute prohibit the recognition of loss in this case?

It is not an uncommon practice, in corporate reorganizations, to give in exchange securities in the new corporation, different in nature and interest rate from those held in the old corporation.

The language of the statute is sufficiently broad to cover an exchange of bonds in a corporation, a party to a reorganization, solely for stock in another corporation, a party to the reorganization, in pursuance of the plan of reorganization. Section 203(b)2. The only question that need detain us, therefore, is whether loss is to be recognized upon an exchange where additional cash is furnished by the old securityholders in order to receive stock or securities equal in face value to securities exchanged.

Under the instant plan, the old bondholder, in order to realize by the exchange an amount of new stock equal in face value to that of his old bonds, was required to pay in cash an amount equal to 50 per cent of the face value of his old bonds. Such provisions are common in corporate reorganization plans, since the new corporation usually finds it necessary to provide new money to carry out the plan, but they more ordinarily affect participating stockholders than bondholders. Tracy on Corporate Receiverships, Foreclosures & Reorganizations (1929). Here the stockholders of the old corporation had no equity in the properties and did not participate in the plan. The petitioner, as a depositor, could have surrendered its bonds without any cash payment, but if it had done so, it would have received only three shares of stock having an aggregate face value of only $300 for each $1,000 bond, while by paying $500 in cash additional, it could obtain ten shares of stock of an aggregate face value of $1,000. The right to obtain seven additional shares of stock by paying in $500 in cash, was one reserved to bondholders of the old corporation, who participated in the plan. This right was evidenced by a negotiable warrant issued to each depositor upon presenting his certificate of deposit, entitling the holder thereof to receive on or about July 20, 1925, seven additional shares of preferred stock for each $1,000 bond represented by the certificate of deposit against which such warrant was issued, on payment to the depositary of $500 in cash for each seven shares. The warrant evidencing such right is property. What each bondholder received upon the exchange of his bonds, therefore, was stock and property.

Under the provisions of subdivision (f) of section 203, no loss is to be recognized in such a case. Cf. *George L. De Blois et al., Executors*, 12 B. T. A. 1138; affirmed in *De Blois v. Commissioner*, 36 Fed. (2d) 11.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*