CORTLAND SPECIALTY COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MRS. H. R. SARGENT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

H. R. SARGENT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 39403, 40353, 40354. Promulgated March 19, 1931.

*M. Manning Marcus, Esq.*, for the petitioners.
*H. B. Hunt, Esq.*, and *L. A. Luce, Esq.*, for the respondent.

OPINION.

Morris: The first question to be determined is whether the transaction between the Cortland Specialty Company, the stock of which the other petitioners herein owned, and the Deyo Oil Company, Inc., was a *reorganization* within the meaning of section 203 (h) (1) of the Revenue Act of 1926, or whether it constituted nothing more than a sale of corporate assets at a taxable profit. That section provides that:

(h) As used in this section and sections 201 and 204—

(1) The term "reorganization" means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (C) a recapitalization, or (D) a mere change in identity, form, or place of organization, however effected.

(2) The term "a party to a reorganization" includes a corporation resulting from a reorganization and includes both corporations in the case of an acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation.

The petitioners have made no attempt to bring the present facts within (B), (C), or (D), of the above statutory definition, but they do contend that substantially all of the Cortland Specialty Company's properties were acquired by the Deyo Company, and that under (A) above, the transaction was a reorganization. There is no question whatsoever but that substantially all of the Company's properties were acquired by the Deyo Company, but we are unable to concede that a "reorganization" was thereby effected within the meaning of the Act.

A reorganization, etymologically speaking, "signifies nothing more than 'the act or process of organizing anew.'" Fletcher

Cyclopedia Corporations, vol. 7, p. 8465. "The term * * * has no very definite meaning in the law of corporations, but is applied indifferently to various proceedings and transactions by which succession of corporations is brought about, and also to proceedings by which existing corporations are continued under a different organization without the creation of a new corporation." *Id.*

In *Symmes* v. *Union Trust Co. of New York*, 60 Fed. 830, 870, the Court quoted with approval the following definition taken from Morawetz in his work on Private Corporations, sec. 812:

The term "reorganization" is commonly applied to the formation of a new corporation by the creditors and shareholders of a corporation which is in financial difficulties, for the purpose of purchasing the company's works and other property, after the foreclosure of a mortgage or judicial sale. The result of a transaction of this kind is to form a new corporation to carry on the business of the old company upon a new basis, free from its debts and obligations, except to the extent that they have been expressly assumed.

In discussing the terms "reorganization," "consolidation," and "merger," Fletcher's Cyclopedia Corporation states that:

Reorganization is clearly distinguishable from consolidation or merger. Sometimes, however, the term reorganization is loosely used as synonymous with consolidation or merger, but in reality there is a clear line of demarcation in that in the former case there are always two or more existing corporations which combine together, while in the latter case there is in effect but one corporation which merely changes its form and ordinarily dies upon the creation of the new corporation which is its successor. In other words, in case of reorganizations there ordinarily are at no time two or more going corporations in existence, while in case of consolidation or merger there must always be two or more existing corporations before there can be any consolidation or merger. [Vol. 7, p. 8467.]

In *Lee* v. *Atlantic Coast Line R. Co.*, 150 Fed. 775, 787, the Court defines mergers and consolidations as follows:

The results of a merger are entirely different from those of a consolidation. Ordinarily, when corporations of two or more states "consolidate", in the technical sense of the term, the old corporations are dissolved and a new corporation comes into being in each state. Note to *Morrison* v. *Snuff Company*, 89 Am. St. Rep. 655; 2 Elliott on Railroads, § 335. However, when two corporations unite by way of merger, the result is not the same as in case of consolidation. In the case of merger the one is absorbed by the other, and when we come to apply the true test as to whether, under a given statement of facts, there has been a merger, it becomes necessary to ascertain whether the existence of one of the corporations, as such, has been preserved, and the other has ceased to exist. In the case of *Atlantic & Gulf R. R. Co.* v. *Georgia*, 98 U. S. 359, 25 L. Ed. 185, the court, in discussing the question as to the difference between a merger and a consolidation, among other things, said:

"That generally the effect of consolidation, as distinguished from a union by merger of one company into another, is to work a dissolution of the companies consolidating, and to create a new corporation out of the elements of the former, is asserted in many cases, and it seems to be a necessary result."

Also in the case of *Vicksburg, etc., Telephone Co.* v. *Citizens' Telephone Co.*, 79 Miss. 341, 30 South, 725, 89 Am. St. Rep. 656, it is said:

"There seems to be a great confusion as to the difference between consolidation and merger and sale. Rightly understood, there never can be a consolidation of corporations, except where all the constituent companies cease to exist as separate corporations, and a new corporation, to wit, the consolidated corporation, comes into being. A merger, rightly understood, is not the equivalent of consolidation at all, but exists where one of the constitutent companies remains in being, absorbing or merging in itself all the other constituent corporations."

Thompson on Corp. § 396, states the law as follows:

"It has been seen that consolidations frequently take the form of one company purchasing the capital stock of another. In such cases, and in others that may be imagined, the terms of the union may be such that one corporation, without any change of name, merely absorbs or annexes the other. In such a case the absorbing corporation continues unaffected, and the other is dissolved. Railway consolidations, for instance, often take the form of the absorption by one railway of others, as where branches are united with a trunk line, or short lines are united with longer lines, so as to form one continuous line, in which case the absorbing company proceeds without any change of name, and succeeds to the rights possessed by the absorbed company."

The facts in this case fail in our opinion to satisfy any one of the above definitions of reorganization, consolidation, or merger. What actually transpired was that, after certain preliminary negotiations between the two companies, they entered into an agreement of bargain and sale whereby certain specified assets were transferred in consideration of a sum certain in cash and promissory notes.

Our determination is borne out by the resolutions of the board of directors and stockholders and by the provisions appearing in the agreement itself. The resolution adopted by the board of directors on September 15 indicates that their intention was to sell all the fixed and tangible property of the company. Following a statement of their purpose the said directors' resolution authorized the president of the company to execute the " * * * necessary instruments to convey the title to the property sold under said contract * * *," and still later therein it referred to the transaction as a sale. Nowhere in said resolution does there appear the slightest hint of an intention to reorganize the company, or to merge or consolidate it with another or other corporations. The agreement itself states that the company " * * * has determined to discontinue such business, and to sell and dispose of all its physical and tangible assets connected therewith, and Whereas second party has determined to purchase such assets * * *," etc., which shows that the transaction as between the parties was one of purchase and sale. The resolution adopted at the stockholders meeting on September 30, was one ratifying and confirming the action of the directors " * * * in authorizing the sale of

all the fixed assets of this corporation to the Deyo Oil Company, Inc. * * *."

The alternative issue is whether the transaction constituted an installment sale. Section 232 of the Revenue Act of 1926 provides that the net income of a corporation "shall be computed on the same basis as is provided in subdivisions (b) and (d) of section 212 or in section 226."

Section 212 provides that:

(d) Under regulations prescribed by the Commissioner with the approval of the Secretary, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the total profit realized or to be realized when the payment is completed, bears to the total contract price. In the case (1) of a casual sale or other casual disposition of personal property for a price exceeding $1,000, or (2) of a sale or other disposition of real property, if in either case the initial payments do not exceed one-fourth of the purchase price, the income may, under regulations prescribed by the Commissioner with the approval of the Secretary, be returned on the basis and in the manner above prescribed in this subdivision. As used in this subdivision the term "initial payments" means the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable period in which the sale or other disposition is made.

The petitioner corporation was clearly not "regularly" engaged in the sale or disposition of personal property on the installment plan in respect to this transaction; consequently, if it is entitled to the benefits of the above section it is by virtue of a "casual sale" of personal property or the sale of real property the "initial payments" from which "do not exceed one-fourth of the purchase price."

A simple statement of the terms of payment obviously precludes the application of the installment provisions of the Act. The total "purchase price" to the Deyo Company was $212,820, plus an amount equal to the value of the merchandise inventory on hand at October 1, 1925, separately provided for in the contract of sale of September 16, 1925, which was found to be $23,803.82, making a total consideration or "purchase price" of $236,623.82. The initial cash payment of $53,250, provided for in said contract, was received by the company on October 1, 1925, which sum was augmented by the receipt of $23,803.82 on October 9, 1925, representing the purchase price of the inventory, $35,500 on November 1, 1925, and $21,300 on December 1, 1925, making the total payments received in cash during the taxable period $133,853.82, or more than 50 per cent of said purchase price.

*Decision will be entered for the respondent.*