H. E. MUCHNIC, ADMINISTRATOR, ESTATE OF CLIVE HASTINGS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

E. E. HASTINGS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 63789, 63790. Promulgated October 26, 1933.

*H. C. Anderson, C.P.A.*, and *M. P. Wormhoudt, Esq.*, for the petitioner.

*C. R. Marshall, Esq.*, for the respondent.

### OPINION.

GOODRICH: Respondent determined deficiencies in income tax for the year 1929 against E. E. Hastings in the amount of $13,739.26, and against Clive Hastings in the amount of $14,703.23. During that year these taxpayers were husband and wife, and residents of Atchison, Kansas. Clive Hastings has since died and his estate is here represented by petitioner Muchnic, as administrator. In these proceedings, which upon motion were consolidated, there is but one issue, namely, whether exchanges of common stock for preferred stock in the same corporation were transactions upon which gain or loss is to be recognized. The evidence was submitted to us by agreement, and as our findings of fact we adopt the stipulation of counsel. To present the issue, only a brief recital of the salient facts is necessary.

For some time prior to 1929 Clive Hastings owned varying amounts of common stock of the Locomotive Finished Material Co., as did also his wife. Prior to 1925 the company had but one class of stock, its entire authorized capital being 20,000 shares of no par value, common, which, however, had a stated value of $25 a share. In that year its charter was amended to permit the issue of 5,500

shares of 7 percent cumulative preferred stock of a par value of $100 a share, redeemable at the option of the company, after notice, at $110 a share. No change was made as to the common stock. The company then offered the preferred stock to its stockholders in exchange for their common stock on the basis of six tenths of a share of preferred for each share of common. Of the sixteen then stockholders of the company, seven accepted the offer, and before the close of the year 9,166 shares of common had been exchanged for 5,499.6 shares of preferred stock. Neither Clive nor E. E. Hastings participated in this exchange. From time to time thereafter the common stock so acquired by the company was reissued through sales or stock dividends. By January 1, 1928, all the preferred stock issued by the company in the exchanges had been redeemed and retired, and by January 1, 1929, the total authorized common stock, 20,000 shares, was again issued and outstanding.

In 1929, without further charter amendment or change in the authorized capital stock, the company again gave opportunity to its stockholders to exchange their common for preferred stock, upon the same basis as before, and gave written notice of the offer. This time the only stockholders who availed themselves of the company's offer were Clive Hastings and his wife. He owned 4,562 shares; she owned 3,702 shares; and each of them turned in 2,500 shares of the common for 1,500 shares of the preferred stock. Consequently, immediately after these exchanges the company had outstanding 15,000 shares of common stock, instead of 20,000 as before, and 3,000 shares of preferred stock, whereas before it had none outstanding. No cash or property other than the stocks was passed in these exchanges.

Respondent determined that the exchanges made in 1929 were transactions upon which gain or loss should be recognized, and that each of these stockholders derived a gain, in amount the difference between the cost of the common stock and the fair market value of the preferred stock (which he took to be the par value) received in exchange therefor. This profit he has, in each case, taxed as a capital net gain.

Petitioners do not object to respondent's method of computing the amount of profit, nor to his determination that such profit should be taxed as a capital net gain. Their position is that the exchanges they made fall within the provisions of section 112 (b) (3), Revenue Act of 1928,[1] as pursuant to a plan of reorganization of the company, and, therefore, no gain or loss thereon may be recognized.

---

[1](3) STOCK FOR STOCK ON REORGANIZATION.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

Four inquiries obviously arise in testing the facts under the express terms of the statute. First: Was there an exchange of stock, solely for stock? Second: Were both stocks issued by a corporation which was a party to a reorganization? Third: Was there a reorganization? Fourth: Was the exchange made pursuant to the plan or reorganization? The first question has already been answered by the facts. The answer to the second question is conditionally obvious; if there was a reorganization, this company was a party to it, for it was the only corporation involved. (See section 112 (i) (2), Revenue Act of 1928). *First Natl. Bank of Champlain, N.Y.,* 21 B.T.A. 415. Likewise, if there was a reorganization, the fourth inquiry may be answered in the affirmative, for the resolution of the directors of the company and the notice sent to the stockholders serve to satisfy the requirement as to the existence of and adherence to a plan. *National Pipe & Foundry Co.,* 19 B.T.A. 242; *William Hewitt,* 19 B.T.A. 771. Consequently, the fundamental point of controversy is, Did the exchange of common stock for preferred stock under the circumstances here effect a reorganization of the company? Respondent maintains that it did not; that if there was any reorganization of this company, it was in 1925, when by charter amendment its authorized capital was changed; that the reissue of a part of its preferred stock in 1929, even though all that stock previously had been redeemed and was not then outstanding, accompanied by a reduction in the amount of common stock outstanding, was not a reorganization.

In our opinion, the transaction was a reorganization. That term is defined by statute (section 112 (i) (1), Revenue Act of 1928) as including " a recapitalization." Statutory definition being lacking, we turn to the authorities for the meaning of " recapitalization." In volume 5 of Cook on Corporations, section 883, is found the following explanation:

A reorganization of a corporation is a business arrangement whereby the stock and bonds of the company are readjusted as to amount, income or priority * * *. An agreement * * * to scale down the securities is generally held not binding on any stockholder who objects * * *. This mode of reorganization is but a recapitalization. It is the voluntary agreement of all stockholders and creditors to change and increase or decrease the capitalization or debts, or both.

That definition has been adopted by respondent. See S.M. 3710, IV-1 C.B. 4; art. 33, Regulations 40. Other text writers have reached a similar conclusion. Miller in " Reorganizations and other Exchanges in Income Taxation " says at page 127:

Exchanges of entire outstanding issues of bonds for stock and vice versa, and of preferred stock for an outstanding common, or an exchange of common for an outstanding issue of preferred—all in the same corporation—are examples of recapitalization.

And Sunley and Pinkerton, in their "Corporation Accounting," say, at page 351, "the term 'reorganization or recapitalization' indicates merely a rearrangement of the capital structure."

In *Cortland Specialty Co.* v. *Commissioner*, 60 Fed. (2d) 937 (affirming 22 B.T.A. 808); certiorari denied, 288 U.S. 599, the court said:

> Reorganization, merger and consolidation are words indicating corporate readjustments of existing interests * * *. The words "a recapitalization" * * * involve the same idea.

There is ample precedent for regarding the exchange of securities of various classes of the same corporation as effecting a recapitalization of the company, which, in turn, constitutes a statutory reorganization, with the result that, if done according to plan, gain or loss upon the exchanges is not to be recognized. In S.M. 3710, *supra*, respondent so concluded respecting an exchange of preferred for common stock in the same corporation; and similarly as to the exchange of bonds for preferred stock in Mim. 3156, II-2 C.B. 24, and I.T. 2035, III-1 C.B. 55. See also I.T. 2216, IV-2 C.B. 19; I.T. 2347, VI-1 C.B. 86. In *Helene Baldwin Burdick, Executrix*, 20 B.T.A. 742, it was suggested that a reduction of outstanding stock of a corporation through exchange by the stockholders of old stock for new was a recapitalization, and a statutory reorganization. This decision was cited with approval in *Benjamin W. Fredericks*, 21 B.T.A. 433, where the same conclusion was reached respecting an exchange of preferred for common stock—affirmed as *Kistler* v. *Burnet*, 58 Fed. (2d) 687. The exchange of bonds for preferred stock was held to be a change in capitalization in *375 Park Avenue Corp.*, 23 B.T.A. 969. In view of these authorities, it seems clear that the exchanges which here occurred effected a recapitalization of the company and that gain or loss arising therefrom should not be recognized.

Respondent contends, however, that the instant exchanges fall short of effecting a recapitalization for the reason that not all of the stockholders participated. The answer to that is one of fact; two stockholders made the exchange offered by the company to all, and as a result the capitalization of the company was changed. Before the exchanges, it had outstanding 20,000 shares of common stock having a stated value of $500,000. After the exchanges, it had outstanding 15,000 shares of common stock having a stated value of $375,000 and 3,000 shares of preferred stock of a par value of $300,000; thus disclosing an increase in its liability upon stock of $75,000. Moreover, there was a "readjustment of existing interests." New priorities as to the company's assets and earnings were assumed upon the issue of the preferred stock, which, together with the reduction in the common stock outstanding, effected a revision of the existing inter-

ests of the common stockholders. It cannot be denied that such readjustments affecting the capital of the company constitute a recapitalization.

We conclude that the gain arising from the exchanges here involved should not be recognized, and that respondent was in error in attempting to lay a tax thereon. As the deficiency notices indicate that corrections should be made respecting other items of income, not in controversy,

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

McMahon dissents.