DAISY M. WARD, PETITIONER, ET AL.,[1] *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

Docket Nos. 62644–62649.   Promulgated February 27, 1934.

*Joseph N. Moonan, Esq., Ray G. Moonan, Esq.,* and *Charles Bunn, Esq.,* for the petitioners.

*John D. Kiley, Esq.,* for the respondent.

OPINION.

GOODRICH: In these proceedings, which were consolidated for hearing, petitioners assail the following deficiencies in income tax for 1929:

|  |  |
|---|---:|
| Daisy M. Ward | $107. 35 |
| Chris M. Peterson | 346. 57 |
| Earl W. Ward | 1, 319. 41 |
| Estate of R. P. Ward | 7, 224. 73 |
| Emerson C. Ward | 124. 89 |
| Charles H. Watson | 4, 314. 60 |

Broadly, the issue relates to the amount of taxable gain derived by petitioners upon the disposition of their stock of the Ward Dry Milk Co., a corporation of Waseca, Minnesota. The facts clearly appear in the various written exhibits in evidence and from short additional testimony. Since they are not in dispute, they need not be fully recited for the purposes of this report.

---

[1] Proceedings of the following petitioners are consolidated herewith: Chris M. Peterson; Earl W. Ward; Daisy M. Ward and Emerson C. Ward, as Executors of the Last Will and Testament of R. P. Ward, Deceased; Emerson C. Ward; and Charles H. Watson.

All the petitioners (including R. P. Ward, deceased, whose estate is here represented by his executors) were stockholders of the Ward Co., which had outstanding 2,000 shares of common and 1,010 shares of its preferred stock. The common stock had been issued for patents, or as dividends, and, as conceded by petitioners, had no cost basis. Of the preferred stock, 844 shares had been issued by the company for cash at par, which was $100 a share. The remaining 166 shares had been purchased for cash at par by the company from the estate of a deceased stockholder, Winship, and thereafter distributed pro rata to the common stockholders.

Under date of June 1, 1929, the Ward stockholders agreed to exchange all their stock for 18,750 shares of the common stock of the Kraft-Phenix Cheese Corporation, on the basis of 16,225 shares of Kraft stock for the 2,000 shares of Ward common, and 2,525 shares of Kraft stock for the 1,010 shares of Ward preferred.

The agreement also provided (and this is the arrangement which gives rise to the controversy) that the Kraft corporation, after it had delivered its stock, if so requested, would repurchase from the Ward stockholders the 2,525 shares of Kraft stock " delivered to said stockholders as consideration for the [Ward] preferred stock " and, in addition, 2,475 shares of the Kraft stock " issued and delivered to [Ward stockholders] as part of the consideration for the [Ward] common stock," both repurchases to be made at $40 a share. Moreover, Kraft agreed to pay the Ward stockholders 6 percent interest on $200,000 (the repurchase price of the 5,000 shares) from June 1 until date of delivery of the Kraft stock, and to pay during the same period, 12½ cents a month on the other 13,750 shares of Kraft stock to be delivered to the Ward stockholders.

At that time, Kraft was under agreement not to purchase any new properties for cash without the approval of its bankers, although it was free to acquire properties for its stock. The agreement between Kraft and the Ward stockholders was carried out in all respects. About June 5 .Emerson C. Ward, who represented the Ward stockholders in the transaction, notified Kraft that it would be required to repurchase 5,000 shares according to the contract. Kraft immediately, through a broker, sold that amount short on the Exchange. On June 27 the Kraft corporation delivered 18,750 shares of its stock to Emerson C. Ward, of which 5,000 shares were issued in his name and the balance issued in the names of the several Ward stockholders according to their interests, the certificates being in such amounts as they had requested. Two days later, on June 29, Emerson C. Ward delivered to Kraft the certificates, endorsed by him, representing the 5,000 shares issued in his name, and then received from Kraft its check totaling $202,628.13, of which $2,628.13 repre-

sented the interest and payments provided by the contract. The 5,000 shares thus acquired from the Ward stockholders Kraft turned in to its broker to cover its short sales, realizing a substantial profit on that transaction. Of the funds received from Kraft, Emerson C. Ward distributed $101,000 to the Ward preferred stockholders; paid the expenses incident to the transaction, and distributed the balance of $89,382.78 pro rata to the Ward common stockholders.

Concerning the tax liabilities of the Ward stockholders arising under that transaction, the parties are at variance on two points. First, petitioners contend that their deal with Kraft was an exchange of stock for stock (both corporations being parties to a reorganization), on which no gain or loss is recognized under section 112 (b) (3) of the 1928 Act,[2] followed by a sale of some of the stock so received by them. As to this respondent, while conceding that a reorganization is involved, maintains that there was but one transaction, falling under paragraph (c) (1)[3] of the same section—an exchange of stock for stock and money, giving rise to recognizable gain, and on that basis he has determined the deficiencies.

So it falls on us to decide whether the deal, as agreed to and consummated, was an exchange by the Ward stockholders of their stock for 13,750 shares of Kraft stock plus $200,000 in cash, as respondent views it, or whether there were two separate transactions, as petitioners contend, first an exchange of stock for stock, and later a sale of 5,000 shares of the stock so received by the Ward stockholders.

The parties agree that the exchange was effected in connection with a reorganization within the meaning of section 112. Since the record contains nothing to indicate that their conclusion is erroneous, we are satisfied to accept it and confine our inquiry to the specific issue presented.

The second point of controversy concerns the cost basis of the Ward preferred stock. A cost of $84,400 is conceded, but petitioners contend that $16,600 should be added thereto, being the amount paid for Winship's stock which was bought by the company and distributed to the common stockholders, thus making the total cost basis $101,000. Respondent refused to allow the increased basis claimed, holding the cost to be $84,400. As petitioners concede that the common stock had no cost basis, they concede also that the entire amount

---

[2] (3) STOCK FOR STOCK ON REORGANIZATION.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

[3] (1) If an exchange would be within the provisions of subsection (b) (1), (2), (3), or (5) of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.

received on sale of the Kraft stock exchanged therefor was profit, and they have so reported.

On the first point we sustain petitioners, for we are convinced that, both in form and substance, the agreements and acts of the Ward stockholders and the Kraft corporation effected two separate transactions; first, an exchange of stock for stock upon which gain or loss is not to be recognized, and, second, a sale of part of the stock so received. True, as respondent argues, taken together the transactions had the effect of an exchange of stock for stock plus cash, but our decision must be based not upon the *effect* finally resulting, but upon what was done. *W. A. Hoult*, 23 B.T.A. 804; *Anna M. Harkness*, 1 B.T.A. 127; *William H. Mullins*, 14 B.T.A. 426; *Minnie C. Brackett*, 19 B.T.A. 1154; *James E. Wells*, 29 B.T.A. 222. The contract plainly provided for an exchange of both preferred and common Ward stocks for amounts certain of Kraft stock. Those exchanges were made. It also provided that Kraft should repurchase 5,000 shares of its stock upon request of the Ward stockholders, who had an option in the matter and were not bound to sell. They did so demand, however, and Kraft repurchased, but after the exchanges had been completed. The delivery of the stocks discharged the bilateral obligations of the contract; there is nothing in it binding the Ward stockholders to resell to Kraft, even after they had given notice to Kraft to be prepared to buy, and, conceivably, they might have changed their minds at any time and decided to keep all their Kraft stock or seek another market for any amount of it. We conclude that the transactions were separate and must be so treated.

Petitioners' second contention we deny. They argue that the distribution to them of the preferred stock purchased from the Winship estate by the Ward Co. with a part of its surplus funds was not a true stock dividend, since the interests of the common stockholders were substantially changed by the acquisition of new preferential rights. Assuming, *arguendo*, that to be so—see *Tillotson Mfg. Co.*, 27 B.T.A. 913; *Peabody* v. *Eisner*, 247 U.S. 347; *Rockefeller* v. *United States*, 257 U.S. 176—it does not follow, as petitioners urge, that the cost of the distributed preferred stock to the corporation should be added to the amount previously paid by the individuals for their holdings of preferred stock. Assuming further, as petitioners would have us, that the distribution was taxable when made, then upon the subsequent disposition of the stock received thereby the cost basis would be its fair market value when distributed. *Estate of Edwin D. Metcalf*, 13 B.T.A. 236; affd., 32 Fed. (2d) 192. As to what that value may have been we have no evidence, and on that matter we can make no assumption. Consequently, we must sustain respondent's denial of a cost basis for the preferred stock in excess of $84,400.

In the view we take of the case it follows that the separate cost bases of the preferred and common Ward stocks carry over to the separate lots of Kraft stock received in exchange therefor, and are to be used in computing gain upon the subsequent sale of the latter.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*