*94 OPINION.
TRAmmell:
The petitioners contend that the Hillman Co. acted as the fiscal agent of the Trust Co. in exchanging shares of stock in the Trust Co. for shares of stock in the Birmingham Bank; that as the Trust Co. acquired a majority of all the shares of stock in the Birmingham Bank pursuant to the offer made by the stockholders of the bank under date of June 20, 1930, both the Trust Co. and the bank were “ parties to a reorganization ” as that term is used in the Revenue Act of 1928; and that the exchange of their stock in the Birmingham Bank for stock in the Trust Co. was a nontaxable transaction under the provisions of the act. The respondent denies that the Hillman Co. was acting as the agent of the Trust Co. in the acquisition of shares of stock in the bank, and contends that, if it be conceded that the Hillman Co. was acting as agent of the Trust Co., there was no reorganization within the meaning of the statute, since the holders of 76.3 percent of the stock in the bank were paid cash for their stock, while only the holders of the remaining 23.7 percent exchanged their stock for stock in the Trust Co. and small amounts of cash to provide for fractional shares.
With respect to the contentions of the parties as to whether the Hillman Co. was acting as agent for the Trust Co. in paying cash for 76.3 percent of the stock in the Birmingham Bank and exchanging stock in the Trust Co. and paying small amounts of money for the remaining 23.7 percent, the evidence shows that prior to June 20, 1930, and during the time the negotiations were being carried on between the officers of the bank and of the Trust Co. it was intended that the Trust Co. would absorb the bank by acquiring its stock and liquidating it. After the negotiations had resulted in the stockholders of the bank submitting under date of June 20, 1930, to the Trust Co. the proposal set out in our findings, the officials of the Trust Co. began a consideration of the legal phases that would be involved in an acceptance of the proposal by the Trust Co. Due to a requirement of the Federal Reserve Board that its permission was necessary before one bank could absorb another and also due to the fact that the Trust Co. was negotiating with respect to the acquisition of another bank, as well as other considerations, the directors took no final action respecting the acceptance of the proposal submitted by the stockholders of the Birmingham Bank. Such acceptance of the proposal would have resulted in a commitment of the Trust Co. which would have been in direct violation of the rule of the Federal Reserve Board, a matter that they sought to avoid. The executive officers of the Trust Co., without disclosing to the stockholders of the bank the position in which they found themselves, *95 arranged with Hillman, chairman of the board of directors of the Trust Co. and a participant in the negotiations, to carry out through the Hillman Co. and Bankshares, Inc., of both of which he was president, a compliance with the proposal submitted by the stockholders of the bank. Among other things the arrangement contemplated that the Hillman Co. would acquire the stock in the bank for the account of the Trust Co., but in the name of Bankshares, Inc., and that that corporation, in order to finance .the transaction, would borrow from the Trust Co. $180,000 on its collateral note and $53,750 on its note endorsed by another corporation known as Pennsylvania Bankshares, and would borrow from the First National Bank at Pittsburgh, an affiliate of the Trust Co., $180,000 on its collateral note and $53,750 on its note endorsed by Pennsylvania Bankshares. So far as the record discloses the directors of the Trust Co. prior to January 13, 1931, took no formal action binding upon the Trust Co. or otherwise respecting, the acquisition either of the stock or of the assets of the Birmingham Bank. Such evidence as there is in the record bearing on the point indicates that prior to January 13, 1931, it was the intention at least of the executive officers of the Trust Co. that that company would acquire the business of the bank through an acquisition of its stock and a distribution in liquidation of its assets and business. However, instead of carrying through that plan the Trust Co., pursuant to a resolution of the executive committee of its board of directors adopted January 13, 1931, purchased the property and assets of the Birmingham Bank for $550,000 in cash and an assumption of its liabilities. The amount of $550,000 was credited to the Birmingham Bank in a deposit account on the books of the Trust Co. Against this deposit the Birmingham Bank, upon liquidation, issued its check for the full amount to A. B. Sheets, vice president of Bankshares, Inc., and the record holder of the stock of the Birmingham Bank. Sheets thereupon caused the stock to be canceled and turned over the $550,000 to Bankshares, Inc.
There is some testimony by two of the officials of the Trust Co. to the effect that, in acquiring the stock of the Birmingham Bank, the Hillman Co. and Bankshares, Inc., were acting as the agent of the Trust Co. and that it was not intended that those companies should acquire an interest therein antagonistic to the Trust Co. On the other hand we find that the directors of the Trust Co. specifically refrained from authorizing the purchase of the stock by the Trust Co. and when the assets and business of the Birmingham Bank were finally acquired it was not as a result of the Trust Co. acquiring the stock of the Birmingham Bank and liquidating the bank, but was by a direct purchase for cash and an assumption of liabilities. *96 When it came to financing the acquisition of the stock of the bank by the Hillman Co. and Bankshares, Inc., the arrangement, instead of providing for the Trust Co. to advance the money to those corporations and take over the stock when it had been acquired, provided for Bankshares, Inc., borrowing the money from the Trust Co. and its affiliates. For such borrowings Bankshares, Inc., was to give four notes, the larger two of which were to be secured by collateral and the smaller two were to be secured by the endorsement of another corporation, which, so far as the record shows, was otherwise a stranger to the parties and to the transaction. From a consideration of the record it is clear that prior to January 13,1931, the directors of the Trust Co. did not intend to nor did they take any action binding on the Trust Co. respecting the acquisition of the stock or the assets of the Birmingham Bank. The most that can be said of the arrangement between the executive officers of the Trust Co. and Hillman is that it was a gentleman’s agreement, entered into by the officers in their individual capacity. So far as the record shows it was never ratified or adopted either by the directors of the Trust Co. or by its stockholders. In fact, so far as the record shows the agreement as made was never carried out, for instead of the Trust Co. taking over the stock of the Birmingham Bank from Bankshares, Inc., after its acquisition, it purchased the assets of the Birmingham Bank, which upon dissolution issued its check to the stockholder of record, who paid the amount thereof over to Bankshares, Inc. Giving due consideration to all the evidence in the case, we are unable to find tit at either the Hillman Co. or Bankshares, Inc., or both, were acting as the agent of the Trust Co. in acquiring the stock of the Birmingham Bank. In order to constitute the agency relationship it must appear that these corporations or at least one of them was acting upon authority from the Trust Co. or that the Trust Co. ratified the action taken. Clearly the Trust Co. did not authorize the action to be taken in its behalf, nor did it expressly or impliedly ratify it. Accordingly the contention of the petitioner on this point is denied.
The Trust Co. not having been, either by authorization or by ratification, a party to the arrangement whereby the Hillman Co. and Bankshares, Inc., acquired the stock of the Birmingham Bank, we fail to see how such acquisition constituted a reorganization of the Birmingham Bank and the Trust Co. or constituted them parties to a reorganization. So far as the record discloses the Trust Co. never at any time acquired any stock in the Birmingham Bank. It was not until after January 13, 1931, that it acquired the assets of the bank, and then for cash and an assumption of liabilities. A transaction of that character does not constitute a reorganization, Pinellas Ice & Cold Storage Co., 21 B.T.A. 425; aff'd., 287 U.S. 462; *97 Cortland Specialty Co., 22 B.T.A. 808; aff'd., 60 Fed. (2d) 937; certiorari denied, 288 U.S. 599, and of course the parties thereto are not parties to a reorganization. The petitioners, however, had disposed of their stock in the Birmingham Bank several months before and in the year preceding this transaction.
As the acquisition by the Hillman Co. of the stock of the petitioners in the Birmingham Bank did not constitute a reorganization of the bank and the Trust Co., nor make them parties to a reorganization, we think the respondent properly included in the taxable income of the petitioners for the year in controversy the profit resulting to them from the disposition of their stock in the Birmingham Bank.
Reviewed by the Board.

Judgment will he entered for the respondent.