THE FIFTH AVENUE BANK OF NEW YORK, AS EXECUTOR OF THE ESTATE OF FREDERIC D. BELL, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 69534. Promulgated December 26, 1934.

*James L. Dohr, Esq.,* for the petitioner.
*T. M. Mather, Esq.,* for the respondent.

OPINION.

ARUNDELL: The respondent has determined a deficiency in decedent's income tax for the year 1930 in the amount of $6,645.22. The deficiency arises from respondent's holding that a transaction

whereby the decedent exchanged stock for stock and a small amount of cash was a transaction taxable in part under the recognition of gain provisions of the Revenue Act of 1928. The facts were stipulated and the stipulation is adopted by reference as our findings of fact. We set forth here only a summary of the facts.

More than two years prior to the transactions hereinafter related petitioner's decedent, Frederic D. Bell, acquired 10,386 shares of stock in a New York corporation, the Lederle Antitoxin Laboratories (hereinafter called Lederle), at a cost of $90,384.85. That stock, it is agreed, was a capital asset in the hands of Bell in 1930.

On February 13, 1930, Lederle entered into an agreement with the American Cyanamid Co., a Maine corporation (hereinafter called Cyanamid), which provided in part as follows:

1. Lederle and Cyanamid shall as soon as reasonably may be reorganize by Lederle transferring or causing to be transferred to Cyanamid or to a new corporation to be formed and nominated by Cyanamid * * * all the properties of Lederle as an entirety * * * but subject to all liabilities of Lederle * * * the said properties embracing, among other things, all the assets, business and good will of Lederle as a going concern * * * the right to use the name "Lederle" and/or "Lederle Antitoxin Laboratories" and/or "Lederle Antitoxin Laboratories, Incorporated" * * *.

2. In consideration of said transfer and as a part of said reorganization (a) Cyanamid will cause to be delivered to Lederle in such name or names as Lederle may direct sixty-four thousand five hundred (64,500) shares of the duly and legally issued full paid and non-assessable Class "B" Common stock without par value and without any voting rights of Cyanamid, and (b) Cyanamid will cause to be delivered to Lederle in such name or names as Lederle may direct all of the authorized seventy-five thousand (75,000) shares of the no par preferred stock of the new corporation, said preferred stock to be callable at any dividend date at Eighteen and two-thirds Dollars ($18⅔) per share, plus accrued and unpaid dividends thereon * * *; said preferred stock shall be entitled to cumulative dividends at the rate of but not exceeding one and twelve-one-hundredths Dollars ($1.12) per share per annum * * *. (c) Cyanamid will cause the transferee of the aforesaid assets to assume the payment of all obligations and indebtedness of Lederle * * *.

It was further agreed that Lederle " as soon as reasonably may be " would change its name, dissolve and liquidate, and distribute to its shareholders the Cyanamid B stock and the stock of the new corporation.

On the same date, February 13, 1930, the Amalgamated Phosphate Co., a wholly owned subsidiary of Cyanamid, entered into an agreement with Lederle in which it agreed that, upon the consummation of the reorganization of Lederle and Cyanamid, it would purchase from Lederle stockholders at $31 per share the Cyanamid B stock " which said stockholders may respectively receive in said reorganization." This purchase was to be made " at the option of such of the stockholders of Lederle as may elect to exercise their rights within in ten (10) days after such consummation of the Plan."

The new corporation above referred to was organized under the Laws of Delaware as "Lederle Laboratories, Inc." (hereinafter called Laboratories, Inc.), with an authorized capital stock of 1,000 shares common and 75,000 shares preferred stock.

Upon organization of Laboratories, Inc., Cyanamid made formal offer to convey or cause to be conveyed all the assets of Lederle which were the subject of the agreement of February 13, 1930, and also all the outstanding stock of Davis & Geck, Inc., which was then owned by Cyanamid. The offer was made in consideration of Laboratories, Inc., issuing all of its 75,000 shares of preferred stock to Lederle or its nominees, and all of its 1,000 shares of common stock to Cyanamid.

The offers and agreements above mentioned were duly submitted to and approved by the directors and stockholders of the several corporations.

By unanimous agreement of the stockholders of Lederle, four of their number, one of whom was Bell, were each to receive 1,897.34 shares of Cyanamid B stock and 2,206.21 shares of Laboratories, Inc., preferred stock, as "special compensation for their services in negotiating and concluding" the exchange agreements. The remaining shares of Cyanamid B stock and Laboratories, Inc., preferred stock were to be distributed to all the stockholders pro rata in accordance with their holdings of Lederle stock.

The several agreements were consummated, and on February 13, 1930, Laboratories, Inc., issued 1,000 shares of its common stock to Cyanamid and 75,000 shares of its preferred stock to the stockholders of Lederle. At the same time Cyanamid issued 64,500 shares of its B common stock to the stockholders of Lederle. At the same time Lederle formally changed its name to Lynbell Corporation and on June 5, 1930, was dissolved.

Bell surrendered his 10,386 shares of Lederle stock and received 9,778 shares of Cyanamid B stock and 11,370 shares of Laboratories, Inc., preferred stock, together with $12.84 to cover fractional shares. The shares so received included those that by agreement among the stockholders he was to receive as compensation for services. He exercised the option under the contract between Lederle and the Amalgamated Phosphate Co. and sold to the latter company his 9,778 shares of Cyanamid B stock at $31 per share, or a total of $303,118. The option given in the contract with the Amalgamated Phosphate Co. was exercised by the holders of 99 plus percent of Lederle stock.

In his income tax return for 1930 Bell reported no gain from the exchange of stock, but reported a gain on the sale of his Cyanamid B stock. In making the computation of the gain on the sale he valued the Cyanamid B stock at $31 per share, or a total of $303,-

118, and the Laboratories, Inc., stock at $18⅔ per share, or a total of $212,240.10. Using these figures, he allocated 303,118/515,358 of the basis of $90,384.85 (cost of Lederle stock), or $53,161.63, to the 9,778 shares of Cyanamid B stock. The gain thus computed amounted to $249,956.37 ($303,118 less $53,161.63), which he reported as a capital gain.

The respondent determined that the exchange was not a tax-free transaction and computed gain upon the exchange as follows:

| | |
|---|---:|
| Cyanamid B stock (market value $31 per share) | $303,118.00 |
| Laboratories, Inc., stock (market value $18.66⅔ per share) | 212,240.10 |
| Cash | 12.84 |
| Total | 515,370.94 |
| Less cost | 90,384.85 |
| Gain | 424,986.09 |

After arriving at the above amount of gain, the respondent applied the limitation set forth in article 575 of Regulations 74, which construes section 112 (c) (1) of the statute, and held that the gain was taxable only to the extent of the $12.84 cash and the fair market value of the Cyanamid stock, $303,118, a total of $303,130.84.

The position of the respondent now is that there was a sale of the Lederle company assets, rather than an exchange in reorganization, and that as a result of such sale Bell realized taxable income to the extent of the difference between the cost of his Lederle stock and the value of both the Cyanamid B stock and the Laboratories, Inc., stock plus the cash. By amended answer counsel for the respondent asks that the deficiency be increased accordingly.

Counsel for the petitioner urges two points—first, that the transaction between the several corporations was an exchange upon which neither gain nor loss is recognized; second, that the fair market value of the Laboratories, Inc., stock was $13.50 per share when received by Bell and that figure should be used in apportioning the basis between the two stocks received, rather than the figure of $18.66⅔ which he used in computing gain on the sale of the Cyanamid B stock. Using the lower figure, it is claimed that Bell overpaid his tax on the income realized from the sale.

The several sections of the Revenue Act of 1928 upon which the parties base their arguments are set out in the margin.[1] We may

---

[1] SEC. 112 (b) (3). STOCK FOR STOCK ON REORGANIZATION.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization. * * *

SEC. 112 (c) (1). If an exchange would be within the provisions of subsection (b) (1), (2), (3), or (5) of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.

summarize them here. Under section 112 (b) (3) no gain or loss is recognized upon the exchange of stock or securities for other stock or securities of the same corporation or of another corporation if they are parties to a reorganization. Under subsection (c) (1) of the same section, if property or money is received in addition to the securities upon which no gain is recognized, then gain is recognized in an amount not in excess of the amount of money and the fair market value of the other property. The statutory definition of "reorganization", in so far as petitioner claims it to be applicable, is found in section 112 (i) (1) (A), which provides that the term "means (A) a merger or consolidation (including the acquisition by one corporation of * * * substantially all the properties of another corporation) * * *." Under section 112 (i) (2) the term "a party to a reorganization" includes a corporation resulting from a reorganization.

Several of the matters dealt with in the statutory provisions above mentioned can be disposed of without much discussion. First, there was unquestionably an exchange of stock for stock. Bell surrendered his Lederle stock and received in exchange therefor stock of Cyanamid and Laboratories, Inc. Likewise it is beyond dispute that the exchange was pursuant to a plan, cf. *J. M. Harrison, Inc.*, 30 B.T.A. 455, and we hold that there was a plan of reorganization, but reserve the question of the extent to which Cyanamid was a participant. We are further of the opinion that, in so far as it concerns Lederle and Laboratories, Inc., there was a statutory reorganization to which both were parties. Laboratories, Inc., acquired all the assets of Lederle, and the stock of Lederle was turned in and it liquidated and dissolved. This acquisition was for stock, a part of which went to Lederle's stockholders. There was thus a continuity of stock ownership by the same interests, which serves to distinguish the transaction from a sale as urged by the respondent. Cf. *Pinellas Ice & Cold Storage Co.* v. *Commissioner*, 287 U.S. 462. Under circumstances very similar to those present here we held, in *First National Bank of Champlain, N. Y.*, 21 B.T.A. 415, that the term "party to the reorganization" includes the corporation which was reorganized and whose securities were surrendered as well as the corporation resulting from the reorganization. We said in part (p. 423):

* * * Any other interpretation would stultify the statute. * * *

* * * It will be observed that paragraph (2) of subdivision (h) of section 203 [Revenue Act of 1926], does not, like paragraph (1), which defines the term "reorganization," employ the word "means," but says that the term "a party to a reorganization *includes*," thereby merely extending the definition to certain other corporations than the one reorganized.

To the same effect is *Rockford Dairy, Inc.*, 26 B.T.A. 501. See also *H. E. Muchnic, Administrator*, 29 B.T.A. 163, where but one

corporation was involved and common stock of that corporation was exchanged for its preferred stock, and we said, " If there was a reorganization, this company was a party to it, for it was the only corporation involved."

In line with the above cases we hold that both Lederle and Laboratories, Inc., were parties to the reorganization.

It follows from what we have said thus far that, under subsections (b) (3) and (c) (1) of section 112, no gain or loss is to be recognized upon Bell's exchange of Lederle stock for Laboratories, Inc., stock.

The respondent's contention that the transaction was in effect a sale appears to be based at least in part on the fact that the Lederle stockholders had an option to sell their Cyanamid B stock within 10 days at $31 per share. We think this is not decisive of the question of whether there was a statutory reorganization. The option did not bind the stockholders to sell to Amalgamated Phosphate Co. Any stockholder who wanted to keep his stock could have done so, or he might have sold elsewhere. The fact that there is a market for the stock, whether created by contract or existing through the medium of a stock exchange, does not convert an exchange into a sale. See *Daisy M. Ward*, 29 B.T.A. 1251.

The next question is whether the receipt by Bell of Cyanamid B stock was a transaction within the nonrecognition of gain or loss provisions. Was there a statutory " reorganization " affecting Cyanamid and was Cyanamid " a party to the reorganization "? There was no merger or consolidation of Cyanamid with either of the other corporations, nor did they merge or consolidate with it. Nor did it either transfer or acquire the requisite amount of property or stock to come within the parenthetical clause of subdivision (A) of section 112 (i) (1). Petitioner makes no claim that the transaction comes within any other subdivision of section 112 (i) (1), and on brief expressly disclaims any attempt to come within subdivision (B). It is obvious that the exchange could not qualify under (B), as Cyanamid acquired only common stock of Laboratories, Inc., and did not acquire preferred stock, hence it did not have " control " under section 112 (j). See *Thomas W. White*, 29 B.T.A. 1272. In this respect the present case differs from *First National Bank of Champlain, N. Y., supra*, in which the corporation holding a position analogous to that of Cyanamid acquired all the stock of the newly organized corporation. Consequently it appears that there was no statutory reorganization in so far as Cyanamid is concerned. It does not follow, however, that Cyanamid stock was not received without recognition of gain or loss. It is sufficient to meet the requirements of section 112 (b) (3) if the stock received is stock in a corporation which is " a party to a reorganization." We have held above that there was a reorganization embracing both Lederle and Laborato-

ries, Inc., and the question now is whether Cyanamid was a party to that reorganization. We have heretofore pointed out that the statutory definition of " party to a reorganization " is not all-inclusive; it appears rather that the definition is designed merely to bring in some corporations in addition to those which are so intimately connected with the reorganization as to require no specific mention in order to come within the term. See article 577 of Regulations 74, stating in part that the definition " simply enumerates certain cases with respect to which doubt might arise."

Examining some of the steps taken in connection with the transfer of property and exchange of securities, it is to be noted that the principal underlying agreement is that of February 13, 1930, between Lederle and Cyanamid. Therein Lederle agreed to transfer its properties " to Cyanamid or to a new corporation to be formed and nominated by Cyanamid." As part of the consideration under this agreement Cyanamid agreed to issue 64,500 shares Class B common stock to Lederle or its nominees. The directors of Cyanamid formally approved the agreement, approved the organization of Laboratories, Inc., and authorized the transfer to it of all the stock of Davis & Geck, Inc., then owned by Cyanamid. The transfer of Lederle properties to Laboratories, Inc., was accomplished, not as a consequence of direct negotiations between those two, but as the result of an offer by Cyanamid to " convey or cause to be conveyed " to Laboratories, Inc., all of the properties of Lederle. Cyanamid obtained actual control of the new corporation by the acquisition of all of its common stock. This outline of Cyanamid's participation in the reorganization indicates that it was in a very substantial way " a party to the reorganization." It was so intimately connected with the several transactions which resulted in the statutory reorganization that in our opinion it must be held to be a party to the reorganization within the statutory sense of the term. The situation here is very similar to that of *Tulsa Oxygen Co.*, 18 B. T. A. 1283. In that case the Tulsa Oxygen Co. agreed to sell its properties to the Union Carbide & Carbon Corporation for stock of the latter. A contract was subsequently drawn designating a subsidiary of Union Carbide & Carbon as the transferee, but upon the actual transfer the Tulsa Oxygen Co. parceled out its assets to several of Union Carbide & Carbon's subsidiaries by direct assignments without regard to the contract. We held that the transaction was a statutory reorganization and that gain was not to be recognized upon the Tulsa Oxygen Co.'s receipt of the stock for its assets. We said in part:

It is apparent that the transaction here involved almost literally satisfies the statutory definition of a nontaxable corporate reorganization. It is clear that the transaction was between the petitioner and the Union Carbide &

Carbon Corporation. All details of the sale were worked out in advance between them and payment made, in accordance with such agreement, out of the stock of this holding corporation. The substitution, therefore, of the name of a subsidiary corporation, in the contract at the suggestion of the attorney was a mere expediency that in no practical way changed the status of the parties responsible for the deal. * * *

While in the *Tulsa Oxygen Co.* case we did not directly discuss the matter of whether Union Carbide & Carbon was "a party to the reorganization," it must necessarily have been; otherwise, the receipt of its stock would have been subject to the gain or loss provisions. We are of the opinion that in this case Cyanamid was a party to the reorganization, and accordingly its stock was received by Bell without recognition of gain.

Summarizing what we have said thus far, we hold that both Laboratories, Inc., and Cyanamid stock were received by Bell without recognition of gain. Consequently respondent's motion for an increased deficiency, on the ground of the exchange of stock for stock being a taxable transaction, is denied.

Petitioner concedes the realization of a taxable profit on the sale of the Cyanamid B stock in 1930 at $31 per share. In making his income tax return for 1930 Bell reported a profit. In computing the amount of the profit he allocated the basis—$90,384.85, this being the cost of the old stock—between the Cyanamid B stock and the Laboratories, Inc., stock in the proportions of $31 and $18⅔ per share, respectively, those figures being what he then regarded as the market values of the stocks. Petitioner now claims that the market value of the Laboratories, Inc., stock was but $13.50 per share, and, using that figure in the allocation of cost, the profit was less than that reported and the tax was overpaid.

We may say at this point that there appears to be no question as to the method of allocation of the basis between the two kinds of stock. See I. T. 2335, C. B. VI-1, p. 18; *Glenn H. Curtiss*, 21 B. T. A. 629; affd., 57 Fed. (2d) 847. Nor is there any issue as to treating the amount of the taxable gain as a capital gain. See section 101 (c) (8) (A), Revenue Act of 1928.

The question here is as to the value to be assigned to the Laboratories, Inc., stock for the purpose of apportioning the basis between the two kinds of stock. The Laboratories, Inc., stock was callable on any dividend date at $18⅔ plus accrued dividends. It had, counsel for petitioner concedes, a book value of $18⅔ and the annual dividend was earned three or four times. The stock was not listed on any exchange. There is evidence of but two sales, one in 1930 and another in 1932, which sales are conceded to be insufficient to establish a real market. The only witness called was the auditor and assistant secretary of Laboratories, Inc., who expressed

the opinion that due to the fact that the stock was not listed its value was 30 percent less than the callable price. It is obvious, we think, that an opinion based upon that one factor alone will not support a finding of fact. It omits too many other factors which go into any determination of value. Consequently we are unable to find the value was any less than $18⅔ per share, which is the figure assigned to the stock in the exchange and was used by Bell in reporting his gain and also by the respondent in determining the deficiency.

In order to dispose of the main points with as little digression as possible we have proceeded thus far in accordance with the theory of both parties in their presentation of the case, namely, that all of the Cyanamid B stock and Laboratories, Inc., stock received by Bell was in exchange for his Lederle stock. It appears, however, from the stipulation that Bell and three others were each to receive, and did receive, 1,897.34 shares of Cyanamid B stock and 2,206.21 shares of Laboratories, Inc., stock as " special compensation for their services " in negotiating the exchange agreements. It is also stipulated that the total 9,778 shares of Cyanamid B and 11,370 shares of Laboratories, Inc., stock received by Bell represented both his share of the allotment of stock for services and " his pro rata share of the remaining shares of said stocks." This, as we understand it, means that Bell received 7,880.66 shares of Cyanamid B and 9,163.79 shares of Laboratories, Inc., stock in exchange for his Lederle stock, the remaining shares being compensation for services. This matter was called to the attention of counsel for the parties who appeared at an informal hearing. Counsel for petitioner indicated that he had no desire to present further evidence or argument concerning it. Consequently our decision must rest on the stipulated facts, which make it appear obvious that both parties erred in treating all of the stock received by Bell as being in exchange for his Lederle stock. The shares received as compensation were not received in a nontaxable reorganization, but represent income to the extent of their fair market value, taxable at ordinary rates as distinguished from the capital gain rates applicable to the income realized upon the sale of the shares received upon the exchange. The amount of tax computed at ordinary rates will of course be greater than the tax at capital gain rates, but, in so far as the resultant tax may be greater than the amount of the deficiency determined by the respondent, it will not be redetermined as a deficiency, in view of the respondent's failure to move for an increase. While the respondent has asked for an increase in the deficiency on the ground that the transaction between the corporations was a sale, he has not asked for any increase growing out of the matter we are considering here.

954

Treating a part of the stock as compensation and the balance as received on the exchange will change the fractions to be used in making an allocation of the basis in determining the amount of the gain on the sale of the Cyanamid B stock. These matters will be given effect in the recomputation.

*Decision will be entered under Rule 50.*