ROCKFORD BRICK & TILE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 67998.   Promulgated November 7, 1934.

*A. F. Schaetzle, Esq.*, for the petitioner.
*B. F. Coon, Esq.*, for the respondent.

OPINION.

ADAMS: The Commissioner proposed a deficiency in petitioner's income tax for the fiscal year ended January 31, 1930, in the sum of $861.44.   In the petition, the errors are alleged as follows:

The determination of tax set forth in the said notice of deficiency is based upon the following errors:

1—The Commissioner has erred in not allowing a loss sustained on account of clay products sold to the Albert Lea Farms Company.   The amount disallowed aggregates $15,873.75.

2—Numerous adjustments were made in the asset accounts and reserves for depreciation, aggregating in a net increase to income in the sum of $30,698.90. It is believed the Commissioner has erred in including these items as income.

Paragraph V of the petition is in part as follows:

The facts upon which the petitioner relies as the basis of this proceeding, are as follows:
As to " 1 "—

The Petitioner sold certain of its clay products to the Albert Lea Farms Company on open account.   Subsequently this company became embarrassed and could not meet its obligations on open account, but were willing to give notes therefor.   The petitioner accepted the notes in good faith and set them up on the books of account in lieu of accounts receivable.   The economic condition as it affected the rural communities continued to grow worse and in order to protect the best interests of the Farms Company it was incorporated as the Hollandale Farms Inc. by the same interests in the Albert Lea Farms Company (i. e. Payne Investment Company), taking over the assets and assuming the liabilities.   Both the Payne Investment Company and the Albert Lea Farms Company were insolvent if forced sale had been pursued.   However, the creditors recognizing the peculiar situation they were occupying, consented, by complacency, to a reorganization of the Albert Lea Farms Co. into a corporation by the name of Hollandale Farms, Inc.

The Petitioner was induced and did accept stock in the Hollandale Farms Incorporated, in lieu of the notes receivable from the Albert Lea Farms Com-

pany. The actual value of the notes had depreciated to not in excess of 15% of their face value. The 85% was charged off as a loss.

The petitioner introduced no testimony at the hearing on the second issue and does not urge the same in his brief, and it is, therefore, considered abandoned. On this issue we find for the respondent.

The Rockford Brick & Tile Co. is a corporation engaged in the manufacture of clay products, principally brick and drainage tile, at the town of Rockford, Iowa. The Albert Lea Farms Co. was incorporated for the purpose of promoting the development of a tract of about 12,500 acres of land in Freeborn County, Minnesota, to be sold in tracts ranging in size from twenty to forty acres to small farmers for the raising of potatoes and other truck farm products. The land was naturally a very fertile but soggy muck soil, requiring drainage to adapt it to crop production. The Albert Lea Farms Co. placed the subdivided tracts in condition for cultivation by draining them with ditches and drainage tile purchased from the petitioner on open account.

In 1926 the Albert Lea Farms Co. was indebted to the petitioner for $15,000 which it was unable to pay. The petitioner consented to a deferred payment of the account and accepted in settlement thereof the Farms Co.'s promissory notes for $15,000, payable at a future date, with the understanding that the Farms Co. would continue to purchase clay tile of the petitioner on a cash basis as the goods were delivered. However, after a while the petitioner began indulging the Farms Co. with further credits, with the result that in 1928 the Farms Co. owed the petitioner on open account $1,899.14 in addition to the notes which were still unpaid, together with accrued interest on the whole indebtedness.

The financial condition of the Farms Co. was such that further credit was out of the question, and that concerted action on the part of the several unsecured creditors was necessary to forestall a foreclosure of a mortgage upon the Farms Co.'s real estate. It was thought that had any of the unsecured creditors started suit for judgment or a receivership the real estate mortgage holders would immediately start foreclosure proceedings at the behest of the holders of the mortgage bonds. So, an attempt was made to effect an agreement among the unsecured creditors whereby the Farms Co. would be granted sufficient time to meet its obligations. The effort met with failure. Some other plan had to be tried out. Accordingly, in February 1928 a creditors' committee was appointed to form a corporation to receive the claims of creditors of the Albert Lea Farms Co. and adjust the conflicting rights of the holders of mortgage bonds and of the general creditors. The Hollandale Farms, Inc., was accordingly organized, the stockholders of which were the

general creditors of the Albert Lea Farms Co. and owned all of the stock of the new company. The general creditors waived all of their rights to about 7,000 acres of the land. The Hollandale Farms, Inc., acquired the remaining 5,500 acres. Each creditor of the old company entering into the new arrangement received stock of the new Hollandale Farms, Inc., in proportion to the amount of his claim surrendered, on the basis of $100 par value. In December 1929 the petitioner received 186¾ shares for its claim of $18,675. This was during the fiscal year ended January 31, 1930.

As a result of the aforesaid transaction the taxpayer charged out all of the debts owing it by the Albert Lea Farms Co. (it had been carrying the notes of the Farms Co. in its accounts receivable), and entered the stock in its accounts receivable in the amount of only $2,801.25, or $15 per share, and charged off the sum of $15,873.75 as its loss sustained in the liquidation of its claim against the Farms Co.

The agreement of the creditors pursuant to which the exchange of claims for stock was finally effected was entered into on the 9th day of January 1929, and recited that the Albert Lea Farms Co. was without current assets or funds wherewith to meet its current liabilities, and that the Atlas Lumber Co. had brought suit against the Albert Lea Farms Co. and a receiver had been appointed who had taken possession and control of the assets of the company. It appeared in the agreement that the Farm Co.'s equities in its lands and land sale contracts amounted to $795,094.20 and that the greater portion thereof was in what was known as the West Side Unit, upon which the Minnesota Loan & Trust Co. held mortgage liens. It was agreed that the Albert Lea Farms Co. would convey the West Side Unit, subject to the mortgage liens above described, to a separate corporation to be organized for the purpose of taking, holding, and disposing of those lands, and that " the stock of the said company shall be issued to and held by the creditors (other than first lien bondholders) and each creditor shall receive stock of the par value of the principal amount of his, her or its claim, and accrued interest to February 1, 1929."

The creditors who participated in the creation of the Hollandale Farms, Inc., acquired all of its capital stock and were in complete control. G. H. Galvin, president and general manager of the petitioner corporation, was one of the creditors' committee and a party to said agreement, representing the general creditors. Galvin testified that there were several sales of stock of the Hollandale Farms, Inc., in 1929 at $10 per share; that the shares of stock of that company were worth not to exceed $15 per share; and that the land itself was without value because there was a " ditch " tax upon the land in the nature of a special improvement tax for drainage ditches constructed to transform the land from swamp to tillable soil.

The petitioner contends that it ascertained the amount due it by the Albert Lea Farms Co. to be worthless and charged the same off in part during the taxable year, and asserts it is entitled to deduct the amount so charged off under the provisions of section 23 (j) of the Revenue Act of 1928, the pertinent portions of which are as follows:

SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

\*          \*          \*          \*          \*          ·          \*          \*

(j) *Bad debts.*—Debts ascertained to be worthless and charged off within the taxable year \* \* \*; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt to be charged off in part.

The respondent contends that the transaction is one in which neither gain nor loss is recognized and that it comes within the purview of section 112 (b)(5) and (j) of the Revenue Act of 1928, which read as follows:

SEC. 112. (b)(5) TRANSFER TO CORPORATION CONTROLLED BY TRANSFEROR.—No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange.

\*          \*          \*          \*          \*          \*          \*

(j) *Definition of control.*—As used in this section the term "control" means the ownership of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of the corporation.

It has been ruled by the Bureau of Internal Revenue that a taxpayer sustains no recognizable loss on a transfer of bonds of a defaulting corporation for stock of a new corporation organized for the purpose of acquiring the property and business of the old corporation following foreclosure proceedings. (I. T. 2071, C. B. III-2, p. 34.)

In the instant case, the creditors of the Albert Lea Farms Co. turned over their claims to the creditors' committee. The creditors' committee organized the new corporation, the Hollandale Farms, Inc., and distributed stock in that company to the creditors in proportion to their claims. This brought the transaction clearly within the provisions of section 112 (b)(5) and the creditors, through the committee, were immediately in control of the corporation on account of their ownership of all its capital stock. This constituted an exchange of the creditors' claims (petitioner being one of them), against the Albert Lea Farms Co. for stock in the Hollandale Farms. Inc., and no gain or loss resulted by reason of this transaction.

Petitioner contends that at the time the stock was received it had a value not in excess of $15 per share and that it was entitled to charge off on its books the difference between the value of the stock and the amount of its debt. Whatever loss petitioner sustained by reason of its dealings with the Albert Lea Farms Co. and the organization of the Hollandale Farms, Inc., must be postponed until such time as petitioner disposes of its stock in the latter corporation.

The petitioner has failed to overcome the presumption of the correctness of the Commissioner's determination, and

*Decision will be entered for the respondent.*