## HOAGLAND CORPORATION v. HELVERING, Com'r of Internal Revenue.

### No. 135.

Circuit Court of Appeals, Second Circuit.

July 24, 1941.

Clark H. Hebner, of New York City, for petitioner.

Samuel H. Levy, Sp. Asst. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Maurice J. Mahoney, Sp. Assts. to Atty. Gen., for respondent.

Before L. HAND, CHASE, and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

This is a petition filed by the taxpayer to review an order of the Board of Tax Appeals assessing a deficiency against it in its income, excess profits, and "personal holding company," taxes for the year 1935. The question is as to the validity of a deduction claimed by the taxpayer, as to which the relevant facts are as follows. The taxpayer held all the shares of a subsidiary, known as Seven Eleven Fifth Avenue, Inc.—2,500 with a par value of $100.00. It also held a promissory note of the subsidiary, payable on demand, on which there was due in 1935 $1,290,000 of principal and $116,100 of interest. The subsidiary's only asset was a term for years in real estate on Fifth Avenue in New York, which was subject to a bond issue of $1,800,000 secured by a mortgage, the unpaid principal upon which on June 1, 1935, was $1,335,500. Before 1932, the property had been well rented, but in that year the tenants began to default in their rent; by 1934 it was only half occupied and it became impossible for the subsidiary to meet its debts as they fell due. The bankers who had underwritten the mortgage formed a bondholders' committee, and in May of 1935 the subsidiary filed a petition under § 77B, 11 U.S.C.A. § 207, and a reorganization followed. All we know of this is as follows. The demand note and the 2500 old shares were "retired * * * through the issuance * * * of its"— the subsidiary's—"entire Class B stock in exchange therefor and as part consideration for the making of the Reorganization Loan." (These "Class B" shares were 8,013 in number of a par of $1.) At the same time and as part of the same reorganization the subsidiary also issued its "Class A" shares—5,342—of a par of $1 to the bondholders, four for each bond, in consideration of which the bondholders reduced the interest on the mortgage from six and one-half per cent to four and extended the maturity of the principal. "Class A" and "Class B" thus became the only shares outstanding; they were alike except that "Class A" could elect two directors and "Class B" three.

The taxpayer deducted $662,440 as a loss, upon the following theory. Its investment in the company was $1,656,100: I.e. the note, $1,290,000; accrued interest, $116,100; the old shares, $250,000; all these it exchanged for the new shares— both "Class A" and "Class B." Thereupon, and as an independent transaction, it delivered the "Class A" shares to the bondholders in consideration of their promise to reduce the interest and extend the maturity. This last was not a "sale or exchange" of "capital assets" and therefore § 117 (d) of the Act of 1934, 26 U.S.C.A. Int.Rev.Acts, page 708, did not limit the loss to $2,000; it was an unlimited "loss" under § 23 (f), 26 U.S.C.A. Int.Rev.Code, § 23 (f). The Board held that the transaction could not be so divided, that there had been a unitary "reorganization" under § 112 (g) (1) (D), and a transfer under §

964

112 (b) (3), 26 U.S.C.A. Int.Rev.Acts, pages 692, 695, from which no gain or loss could be recognized.

The taxpayer has consistently maintained its position that the reorganization should be treated as made up of two quite independent parts, and does so upon this appeal; but it is apparent that the Board was right in refusing so to treat it. At no time was the taxpayer entitled to the "Class A" shares; they belonged to the bondholders from the moment of their issue. However, it would have made no difference if the reorganization had been as the taxpayer wishes us to regard it. Even so, and even if in addition the supposititious transaction with the bondholders was a "loss" under § 23 (f) (which is at best extremely doubtful), the measure of that loss would be the value of the "Class A" shares and that does not appear in the record. It would be altogether gratuitous to assume that they were worth forty per cent of the face of the note together with the par of the original 2500 shares; presumptively the term of years, which was the only asset, had fallen in value, and the value of what remained is wholly undisclosed. Yet on the taxpayer's theory that is the only relevant value, for the deduction is to depend upon its losing these shares in 1935.

There is a possible alternative which the Board considered. The reorganization being single, the taxpayer's only share in it was to cancel the note and the old shares in exchange for the "Class B" shares alone. If we assume with the Board that that transaction was within § 112 (b) (3)—in spite of LeTulle v. Scofield, 308 U.S. 415, 60 S.Ct. 313, 84 L.Ed. 355—there was no "recognizable" loss. If on the other hand we assume that the cancellation of a demand note cannot be the "exchange" of a "security" within § 112 (b) (3), even though it be made in the course of a "recapitalization" and therefore of a "reorganization" under § 112 (g) (1) (D), still the taxpayer did not prove its "loss." If in that event the loss is measured like a "recognizable" exchange, both the minuend and the subtrahend of the equation are lacking. We know neither the "basis" of the note and of the old shares, nor the "amount .received," i.e. the value of the "Class B" shares. If any part of the loss is to be measured as a bad debt, it does not appear that the note was

"ascertained to be worthless" in 1935. On no theory could any part of it be deducted.

Finally, there is no ground for remanding the case under the doctrine of Helvering v. Taylor, 293 U.S. 507, 55 S. Ct. 287, 79 L.Ed. 623, because on this record there was no error. If the taxpayer wishes a rehearing, it must apply to the Board, in which event our affirmance will not be taken as forbidding the Board to entertain the motion, though we do not mean in the slightest degree to intimate that it should do so.

Order affirmed.