**PRAIRIE DU CHIEN–MARQUETTE BRIDGE CO. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 8431.

Circuit Court of Appeals, Third Circuit.

Argued Nov. 2, 1943.

Decided May 1, 1944.

Paul E. Hutchinson, of Pittsburgh, Pa. (H. E. McCamey, William Wallace Booth, W. A. Seifert, and Reed, Smith, Shaw & McClay, all of Pittsburgh, on the brief), for petitioner.

Samuel H. Levy, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Muriel S. Paul, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before BIGGS, GOODRICH, and McLAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge.

The question here involved is whether the taxpayer's basis for computing depreciation upon its bridge property is the same that the property would have had in the hands of the predecessor company or whether it should be the market value of the property at the time the taxpayer acquired it. The answer to this depends on whether the original bridge corporation was reorganized in accordance with Section 112(g) (1) of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts page 695, which defines a reorganization as:

"(C) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its shareholders or both are in control of the corporation to which the assets are transferred."

Where there is such reorganization within the contemplation of the Act, Section 113(a) (7) of the Act, 26 U.S.C.A. Int. Rev.Acts, page 698, provides:

" * * * the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made. * * *"

Section 112(h) of the Act reads:

"(h) Definition of Control. As used in this section the term 'control' means the ownership of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of the corporation."

In September 1931, Prairie du Chien Bridge Company was constructing a bridge

across the Mississippi River. Pittsburgh-Des Moines Steel Company was supplying the necessary steel. Because of financial difficulties of the bridge corporation, the steel company became its sole stockholder. The main reason for it taking control of the company was the necessity of furnishing a surety bond so as to permit the sale of first mortgage 6½% sinking fund gold bonds of the old bridge company and make possible the completion of the contract. The bridge was finished in March of 1932. Thereafter the bridge company defaulted in the payment of its bond interest. Following this, the bridge company filed a voluntary petition in bankruptcy and was declared a bankrupt January 18, 1933. The bridge property was then purchased by the steel company at a bankruptcy sale. The agreed purchase price was proportionate endorsed payment on the bonds of the old bridge company owned by Pittsburgh-Des Moines Steel Company and cash to be advanced by the latter. The plan was to organize the petitioner corporation, with the bridge property and a particular group of bonds in the old bridge corporation (owned by bondholders who were represented by the investment house of Bartlett & Gordon, Inc.) to be transferred to the new corporation in exchange for its first mortgage 6½% bonds, its 6½% preferred stock and its common stock, in direct proportion to the total bonds of the old bridge company owned by the parties to the agreement. This plan was followed, with the Pittsburgh-Des Moines Steel Company acquiring $153,600, 6½% first mortgage bonds of the new corporation, who is the petitioner here, and more than 80% of all classes of that corporation's authorized capital stock.

As is seen, the steel company, or its nominees, held all the stock of the original bridge company. It holds more than 80% of the stock of the new company; with control of the latter following as a matter of course. So the stockholders of the old company have control of the new company and the only problem presented is whether that control must have been retained by the old stockholders because they were such stockholders or whether it is enough that the persons having control of the new company were former stockholders although they received the stock in the present corporation in their capacity as creditors of the old company. The Tax

Court opinion conceded that the sole stockholder of the original bridge company was in "control" of petitioner immediately after its acquisition of the bridge property but because the stock ownership constituting that control was acquired by virtue of ownership of the bonds of the bridge company—not its stock, that court excluded the transaction as a reorganization under Section 112(g) (1) (C). It did this specifically upon the authority of Thatcher v. Commissioner, 46 B.T.A. 869, pet. for rev. dismsd. The Thatcher case has now been reversed by the Tenth Circuit Court of Appeals in 137 F.2d 128, at page 129, where the court said:

"The language of Subsection (h) is clear and free from ambiguity. It states in language too clear for doubt that if, after the transfer of the assets of the old corporation to the new, the old stockholders own at least eighty per cent of the voting stock and eighty per cent of all stock, they are in control as defined by Clause (C). Under Section 112(b) (3), no gain or loss is recognized if stock or securities are exchanged solely for stock or securities in the new corporation. All the stockholders of the defunct corporation exchanged for their stock in the new company was their interest in the old corporation."

\* \* \* \* \* \*

"Congress did not say that in determining the question of control by the old stockholders you must separate stock they received for securities from that which they received for their stock, and in the absence of such an expression from Congress, we may not make such an addition to the law. All that Congress said was that to constitute control the old stockholders must own eighty per cent of the voting stock and eighty per cent of all outstanding stock in the corporation, and this they do in this case."

Helvering v. Alabama Asphaltic Limestone Co., 315 U.S. 179, 62 S.Ct. 540, 86 L.Ed. 775, and Helvering v. Southwest Consolidated Corporation, 315 U.S. 194, 62 S.Ct. 546, 86 L.Ed. 789, are urged as supporting the respondent's position that the situation here presented is not a reorganization under the Act. In the Limestone case the Tax Court recognized as a proper Revenue Act reorganization, a situation where the property of a bankrupt concern was acquired by a bondholders committee, then transferred to the committee's new corporation in exchange

for its securities issued to the creditors of the old corporation. If anything, that case supports the taxpayer's position here where the transition from the original bridge company to the present petitioner corporation was all part of the plan of the steel company to work out the financing of the bridge construction and get the bridge completed. The court said, 315 U.S. at page 184, 62 S.Ct. at page 544, 86 L.Ed. 775:

"Some contention, however, is made that this transaction did not meet the statutory standard because the properties acquired by the new corporation belonged at that time to the committee and not to the old corporation. That is true. Yet the separate steps were integrated parts of a single scheme. Transitory phases of an arrangement frequently are disregarded under these sections of the revenue acts where they add nothing of substance to the completed affair. Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355; Helvering v. Bashford, 302 U.S. 454, 58 S.Ct. 307, 82 L.Ed. 367. Here they were no more than intermediate procedural devices utilized to enable the new corporation to acquire all the assets of the old one pursuant to a single reorganization plan."

The Southwest Corporation case is not in point because it was patently not a reorganization under Clause (C) as the control of the new corporation was not in the old stockholders. The decision in that case was to the effect that the stock issued to the creditors who apparently did not have the right to vote in the old corporation, could not be added to that issued to stockholders in order to attain the requisite amount of stock for control of the new company.

Because we consider the present transaction to be a reorganization within Section 112 of the Revenue Act, the other points in the case do not arise and, there-fore, there is neither need nor use of discussing them.

The decision of the Tax Court is reversed, and the cause remanded with instructions to redetermine the tax in accordance with this opinion.

BIGGS, Circuit Judge (dissenting).

I dissent. In the case at bar the bondholders of the old company, who were also stockholders of the old company, are in control of the new corporation because they were bondholders and not because they were stockholders. I construe the provisions of clause (C) of Section 112 (g) (1) of the Revenue Act of 1934, 48 Stat. 705, 26 U.S.C.A. Int.Rev.Acts, page 695, to mean that the control required to be retained by the stockholders of the old company must be retained by them as stockholders.[1] I think that Congress intended to grant tax exemptions because of the continuity of interest in the business of stockholders as stockholders. Had the congressional intention been otherwise the clause would not have used the word "stockholders".

This view finds support in the dictum of the Supreme Court in Helvering v. Alabama Asphaltic Limestone Co., 315 U.S. 179, 62 S.Ct. 540, 86 L.Ed. 775, and in its decision in Helvering v. Southwest Consol. Corp., 315 U.S. 194, 62 S.Ct. 546, 86 L.Ed. 789. In the case first cited it was held that the stockholders of a parent corporation who were creditors of a subsidiary corporation and under a plan of reorganization acquired the equity interest of the subsidiary did maintain continuity of proprietary interest within the purview of clause (A) of Section 112(i) (1) of the Revenue Act of 1928.[2] The Court stated, however, 315 U.S. at page 183, 62 S.Ct. at page 543, 86 L.Ed. 775, that " * * * there was 'no reorganization' in this case, since the old stockholders were eliminated by the plan, no portion whatever of their

[1] See the letter of February 12, 1934, written by the Secretary of the Treasury to Chairman Doughton of the Ways and Means Committee of the House of Representatives in respect to the bill pending before Congress (Cong. Rec. Vol. 78, Part. 3, p. 2512) in which he stated: "The Treasury regards it as desirable that business readjustments be permitted without tax consequences in cases where the stockholders in the enterprise are retaining their interests without the receipt of cash and the essential of con-tinuity of the business is being preserved."

[2] Clause (A) of Section 112(i) (1) of the Revenue Act of 1928, 26 U.S.C.A. Int. Rev.Acts, page 379, reads as follows:

"(A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), * * *."

proprietary interest being preserved for them in the new corporation. And it is clear that the fact that the creditors were for the most part stockholders of the parent company does not bridge the gap. The equity interest in the parent is one step removed from the equity interest in the subsidiary. In any event, the stockholders of the parent were not granted participation in the plan qua stockholders."

In the second case cited, the Supreme Court dealt with transactions whereby, pursuant to a plan, an indenture securing the bonds of an insolvent corporation was foreclosed and the properties of the corporation transferred to a new corporation. The bondholders and other creditors received the stock of the new corporation. Warrants were delivered to the stockholders of the old corporation. The Court held that the transaction failed to qualify as a reorganization under clause (B) of Section 112(g) (1) of the Revenue Act of 1934[3] or under clause (C) of that section. The Supreme Court held that although the creditors might have acquired the equitable interest in the property and have supplanted the stockholders, such a continuity of interest did not meet the requirements of clause (C). The Supreme Court stated, 315 U.S. at page 202, 62 S.Ct. at page 551, 86 L.Ed. 789: "But it is one thing to say that the bondholders 'stepped into the shoes of the old stockholders' so as to acquire the proprietary interest in the insolvent company. It is quite another to say that they were the 'stockholders' of the old company within the purview of clause (C). In the latter, Congress was describing an existing, specified class of security holders of the transferor corporation. * * * Indeed clause (C) contemplates that the old corporation or its stockholders, rather than its creditors, shall be in the dominant position of 'control' immediately after the transfer and not excluded or relegated to a minority position."

The distinction between the proprietary interests of a stockholder and the interests of a creditor has been maintained in tax cases. The fact that the bondholder upon default has obtained the corporate assets does not serve to change " * * * his status from that of a creditor to one having a proprietary stake, within the purview of the statute." See LeTulle v. Scofield, 308 U.S. 415, 421, 60 S.Ct. 313, 316, 84 L. Ed. 355. In the case at bar the fortuity that the bondholders also held the stock of the old company is immaterial. The proprietary interest literally has passed from stockholders to bondholders. It follows that the transfer of properties from the old to the new corporation constituted a real change in ownership and takes the transactions out of the reorganization provisions of the Act.[4] If the exemption provisions are made applicable to such transactions, the incidence of taxation is not postponed but lost.

For these reasons I must concur in the views expressed by the United States Board of Tax Appeals in Huntzinger v. Commissioner, 46 B.T.A. 869, despite the fact that this decision was overruled by that of the United States Circuit Court of Appeals for the Tenth Circuit in Commissioner v. Huntzinger, 137 F.2d 128.

Assuming that the acquisition of the bridge property by the petitioner was within the purview of Section 112(b) (5) of the Act, 26 U.S.C.A. Int.Rev.Acts, page 692, I must conclude, as did the Board, that the record does not disclose the fair market value of the bridge property at the time the interest of the bondholders of the old company as such matured into equitable interests in the properties of the old company which were conveyed to the petitioner. There is in fact no evidence which would support a finding of fair market value for the bridge property. In view of this fact there can be no point in discussing other contentions made by the petitioner.

---

[3] Clause (B) of section 112(g) (1) of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, page 695, reads as follows:

"(B) the acquisition by one corporation in exchange solely for all or a part of its voting stock: of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of another corporation; or of substantially all the properties of another corporation, * * *."

[4] See Paul, Studies in Federal Taxation, Third Series, p. 5, " * * * the legislative intent in the reorganization provisions is to permit nothing more than a postponement of tax incidence to some future time when there is more than a 'mere change in the form of ownership.' "