## SEIBERLING RUBBER CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10521.

Circuit Court of Appeals
Sixth Circuit.
July 19, 1948.

MILLER, Circuit Judge, dissenting in part.

———◇———

Robert Guinther, of Akron, Ohio, for petitioner.

Helen Goodner, of Washington, D. C. (Theron Lamar Caudle, Sewall Key, George A. Stinson and S. Walter Shine, all of Washington, D. C., on the brief), for respondent.

Before SIMONS, McALLISTER, and MILLER, Circuit Judges.

McALLISTER, Circuit Judge.

On March 31, 1934, petitioner, Seiberling Rubber Company, owned 3,772 shares of the 5,000 shares of common stock, and 250 shares of the 501 shares of the preferred stock, of Kemitex Products Co. As of the same date, the latter company owed an unsecured indebtedness to petitioner in the amount of $323,993.70.

Shortly thereafter, on April 3, 1934, petitioner addressed a letter to Kemitex Products Co., proposing the sale of all of the assets of Kemitex Products Co. to a new corporation, to be known as Kemitex Products, Inc., which would assume all of the indebtedness of the Kemitex Products Co., with the exception of $300,000.00 owing to petitioner. Furthermore, it was proposed that petitioner would accept all of the capital stock of the new company, and a note in the amount of $23,993.00 in full settlement of its claim of $323,993.00; that the new company would assume the indebtedness of the Kemitex Products Co. to all of its creditors having claims of $250.00 and over (except claims for taxes and purchase contracts), by giving specified promissory notes to such creditors; and would pay the lesser creditors in the ordinary course of business; and petitioner agreed in its letter that, if the proposal were carried out, it would give one share of common stock, out of the total common stock it received on the transaction, to each holder of a share of preferred stock in the old company, to the end that the preferred stockholders in the old company would have an opportunity to secure something for their investment. The proposal was accepted and the plan carried out as suggested by petitioner.

Several years later, in 1941, petitioner filed a tax return showing a loss of $296,-622.22 on the sale of its Kemitex Products, Inc. stock. It further claimed a credit for

excess profits tax because of a disallowed bad debt deduction. The Commissioner disallowed the claimed loss on petitioner's sale of its stock in Kemitex Products, Inc., and, further, denied the claim for credit for excess profits tax; and, on review, the Tax Court affirmed the determination of the Commissioner.

It is agreed that petitioner's claim with respect to its loss on the sale of its stock in Kemitex Products, Inc. depends upon whether the transaction whereby it secured the stock at the time of the organization of that company, was an exchange in which no gain or loss was recognizable under Section 112(b) (4) or (5) of the Revenue Act of 1932, 47 Stat. 169, as amended, 26 U.S.C.A. Int.Rev.Acts, page 511. Moreover, it is stipulated between the parties that if the determination of the Commissioner was erroneous with respect to the sale of the stock, an improper deduction was made in the amount of $296,622.22 from the accumulated earnings and profits account of petitioner for the tax year of 1941. The propriety of the Commissioner's determination with respect to the sale of the stock depends upon whether the transaction in question was an exchange in which no loss or gain is recognizable under the pertinent provisions of the statute.

There are, accordingly, two main questions before us: (1) whether the stock transaction in controversy was a tax-free exchange; and (2) whether a claimed bad debt deduction which was disallowed by the Commissioner was properly thereafter excluded by the Commissioner from petitioner's earnings and profits account on which a credit for excess profits tax was claimed. We come, then, to the first issue.

### First Issue

It is contended by petitioner that the transactions between petitioner and the old and new Kemitex Corporations constituted a non-taxable reorganization under Sections 112(b) (4) and (5) of the Revenue Act of 1932, as amended.

We shall, at the outset, consider the objectives of these statutory provisions, as such indication of the legislative intent may illuminate their meaning and assist in their interpretation and application in this case.

The purpose of the statutory non-recognition of gain or loss from reorganization transactions, as indicated by the legislative history, was in part to prevent losses being established by bondholders, as well as stockholders, who received the new securities without substantially changing their original investment. The legislative history confirms the Congressional intent to cover reorganizations where the taxpayer's money is still tied up in the same kind of property as that in which it was originally invested. United Gas Improvement Co. v. Commissioner, 3 Cir., 142 F.2d 216. The reorganization provisions were enacted to free from the imposition of an income tax purely paper profits or losses where there is no realization of gain or loss in the business sense but merely the recasting of the same interests in a different form, the tax being postponed to a future date when a more tangible gain or loss is realized. This is recognized by the Treasury Regulations. They state that: "The purpose of the reorganization provisions * * * is to except from the general rule certain specifically described exchanges * * * which effect only a readjustment of continuing interests in property under modified corporate forms. Requisite to a reorganization under the Act are a continuity of the business enterprise under the modified corporate form, * * * continuity of interest therein on the part of those persons who were the owners of the enterprise prior to the reorganization." Commissioner of Internal Revenue v. Gilmore's Estate, 3 Cir., 130 F.2d 791, 794. These reorganization sections were enacted so that legitimate reorganizations, required in order to strengthen the financial condition of corporations, will be permitted. Since 1934, administrative interpretation of the reorganization section has limited its benefits to readjustments as are required by business exigencies and which are undertaken for reasons germane to the continuance of the business of a corporation, a party to the reorganization. Bazley v. Commissioner, 3 Cir., 155 F.2d 237, 242.

In determining whether Section 112(b) (4), hereinafter set forth, applies to the facts in this case, we must first decide whether the transaction in question amounted to a reorganization, as the above mentioned section of the statute which relates to non-recognition of gain or loss, applies only to reorganizations.

Section 112(i) of the Revenue Act in effect in 1934, 26 U.S.C.A. Int.Rev.Acts, page 513, at the time the changes in question were consummated, provided: "The term 'reorganization' means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or part of its assets to another corporation if immediately after the transfer the transferor or its shareholders or both are in control of the corporation to which the assets are transferred, or (C) a recapitalization, or (D) a mere change in identity, form, or place of organization, however effected."

Here, there was a transfer by the old Kemitex Products Co. of all of its assets to the new company, Kemitex Products, Inc. The petitioner, Seiberling Rubber Company, had been the owner of 3,772 shares of the 5,000 shares of common stock of the old Kemitex Products Co. When the transfer from the old company to the new company was made, petitioner became the owner of all 5,000 shares of the common stock of the new company.[1]

Respondent insists that petitioner received its stock in the new company in its capacity as a creditor of the old corporation and that there was no continuation of petitioner's status of stockholder for the reason that, because of the insolvency of the old corporation, such relationship as stockholder no longer existed. It is, therefore, contended that there was no reorganization, because petitioner was in control after the transfer only as creditor and not because of its prior stockholding interest. This fact, declares respondent, prevents the transaction from coming within the definition of a reorganization as set forth in the statute, inasmuch as petitioner, as stockholder of the old corporation, was not in control of the new corporation. However, it makes no difference whether control was retained by the old stockholders, in their capacity as such stockholders, or because of the fact that they were creditors. It is enough that the persons having control of the new company were former stockholders, although they received the stock in the new corporation resulting from the reorganization in their capacity as creditors of the old company. Prairie Du Chien-Marquette Bridge Co. v. Commissioner, 3 Cir., 142 F.2d 624. See to the same effect Commissioner of Internal Revenue v. Huntzinger, 10 Cir., 137 F.2d 128.

In the instant case, moreover, it is to be again emphasized that petitioner, as stockholder, was in control of the old corporation up to the time of reorganization, and, as a result of the reorganization, continued in control of the new corporation. It is our conclusion that the transaction in controversy amounted to a reorganization under Section 112(i) (B), as above set forth, since there was the transfer by a corporation of all of its assets to another corporation, and immediately after the transfer, the stockholders of the old transferring corporation were in control of the new corporation to which the assets had been transferred; and it is unimportant that, in the transaction, a small number consented, or raised no objection to their elimination as stockholders. United Gas Improvement Co. v. Commissioner, 47 B. T.A. affirmed 3 Cir., 142 F.2d 216; Miller v. Commissioner, 6 Cir., 84 F.2d 415.

We come, then, to the question whether any gain or loss was recognizable on the reorganization. This depends on whether the transaction falls within the provisions

---

[1] Incidentally, it is to be remarked that according to the written agreement under which the transactions were carried out, petitioner transferred 251 shares of the new common stock to parties who had held 251 shares of the preferred stock of the old company. This, however, is of no controlling importance in the issues before us.

of Section 112(b) (4) of the Revenue Act. This Section provides: "No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization."

Respondent declares that the foregoing statutory provision does not apply to the transaction in this case for the reason that petitioner was not a party to the reorganization; and that, in any event, there was no exchange of property; and that if there was an exchange of property for stock, it was not an exchange *solely* for stock in the new corporation, within the intendment of the statute.

It is true that petitioner was only a stockholder and creditor of the old corporation; and that it was also only a stockholder and creditor of the new corporation as a result of the transaction. Moreover, the formation of the new corporation, the transfer to it of the assets of the old corporation, the wiping out of the common and preferred stock of the old corporation, the capitalization of the huge debt of the old corporation to the petitioner in the form of common stock in the new corporation, the issuance of all of the stock of the new corporation to petitioner, and the assumption of the indebtedness of the old corporation by the new, were all separate steps. "Yet, the separate steps were integrated parts of a single scheme. Transitory phases of an arrangement frequently are disregarded under these sections of the revenue acts where they add nothing of substance to the completed affair. * * * Here they were no more than intermediate procedural devices utilized to enable the new corporation to acquire all the assets of the old one pursuant to a single reorganization plan." Helvering v. Alabama Asphaltic Limestone Co., 315 U.S. 179, 184, 62 S.Ct. 540, 544, 86 L.Ed. 775. We are of the opinion that petitioner corporation must be considered to have been a party to the reorganization within the contemplation of Section 112(b) (4). It acquired all the stock of the new corporation on the reorganization.[2]

With respect to the contention that petitioner exchanged no property for the stock in the new corporation and that, therefore, Section 112(b) (4) did not apply, it has been repeatedly held that all of the different steps taken under a reorganization plan must be regarded as component parts of the plan and cannot be treated as isolated transactions in determining the tax consequences. Prairie Oil & Gas Co. v. Motter, 10 Cir., 66 F.2d 309. In the present case, upon the execution of the plan, all of petitioner's stock in the old company was wiped out, and an indebtedness of $300,-000.00 was surrendered. In return, petitioner received the stock of the new corporation. After petitioner's surrender of its $300,000.00 indebtedness, there remained a balance due petitioner in the amount of $23,993.73 from the old corporation. This indebtedness was assumed by the new corporation. Strangely enough, this integrated transaction would seem to bring the case within the decision of The Hoagland Corporation v. Commissioner, 42 B.T.A. 13, affirmed Hoagland Corporation v. Helvering, 2 Cir., 121 F.2d 962, and United Gas Improvement Co. v. Commissioner, supra, where it was held that the exchange of stock and surrender of indebtedness for shares of stock in a new corporation resulted in a tax-free exchange on a reorganization. That, however, was under Section 112(b) (3) of the Revenue Act which was relied upon for decision in those cases, and which provides that no gain or loss shall be recognized where *stock or securities* are exchanged for stock or securities on a reorganization. It was held that the exchange of stock in the old company for stock in the new, brought the transaction under Section 112(b) (3) although other property than "stock or securities" was given in exchange solely for stock in the

---

[2] Congress defined a "party to a reorganization," as used in Section 112(b) (4), as follows, in Section 112(i) (2): "The term 'party to a reorganization' includes a corporation resulting from a reorganization and includes both corporations in the case of an acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation."

new corporation. "The fact that the cash or other property than 'stock or securities' is given in exchange 'solely for stock or securities' does not prevent the application of section 112(b) (3). W. H. Hartman Co. v. Commissioner, 20 B.T.A. 302; First National Bank of Champlain, N. Y. v. Commissioner, 21 B.T.A. 415; George E. Hamilton v. Commissioner, 30 B.T.A. 160; Securities Co. v. Commissioner, 2 Cir., 64 F.2d 330. While the indebtedness for moneys advanced to the reorganized corporation was not 'securities' (or stock), it was nevertheless, we think, an additional consideration for the new stock and for that reason may not be treated as a bad debt of the taxable year." (47 B.T.A. at page 726.)

In the instant case, instead of relying on an exchange of stock for stock in the new corporation, under Section 112(b) (3), as was the situation in the foregoing case, petitioner bases its case upon its exchange of property for stock in the new corporation under Section 112(b) (4). The property which petitioner claims it exchanged for stock was the indebtedness of $300,000.00 owed to it by the old company. Was such indebtedness property within the meaning of the statutory provisions? The Tax Court held that it was not. Petitioner insists that it was; and this is one of the crucial questions in the present controversy.

In the case of United Gas Improvement Co. v. Commissioner, 47 B.T.A. 715, 726, above mentioned, the Board of Tax Appeals referred to obligations which a corporation owed to the petitioner therein, as being "other *property* than 'stock or securities,' " which was given in exchange for stock in a new corporation on a reorganization.

In Miller & Paine v. Commissioner, 42 B.T.A. 586, it was held that where creditors exchanged notes which they held against a corporation, for stock in a reorganized corporation, there was an exchange of property for stock within the meaning of 112(b) (5). "In the instant case there can be no question but that the creditors of the New Jersey corporation, including petitioner, transferred their notes against that corporation to the New York corporation and received in exchange therefor solely stock in the New York corporation. In other words, they did not receive payment of their debts, but exchanged their debts for a continuing interest in the new corporation. This is the sort of transaction where no gain or loss is recognized, provided the conditions required by Section 112(b) (5) of the Revenue Act of 1934 are met." 42 B.T.A. at page 593. See also Reed v. Commissioner, 4 Cir., 129 F.2d 908; Hartford-Empire Co. v. Commissioner, 2 Cir., 137 F.2d 540; Rockford Brick & Tile Co. v. Commissioner, 31 B.T.A. 537. In Duncan v. Commissioner, 9 T.C. 468, which was decided subsequent to the instant case before the Tax Court, it was held that the surrender of obligations for cancellation in exchange for stock of a new corporation organized to take over and continue the business of the original obligor was a transfer in exchange under Section 112(b) (5) of the Revenue Act of 1934, requiring a transfer of *property* in exchange for stock in order to qualify as an exchange with respect to which no gain or loss is recognized. The Tax Court said, in deciding the case: "Although a corporation receives no additional assets by the surrender to it of its own stock or its own evidences of indebtedness, nevertheless, the courts have applied the nonrecognition provisions * * * in such cases." A dissenting opinion by one of the judges in the Duncan case pointed out that that decision overruled the holding in Seiberling Rubber Co. v. Commissioner, 8 T.C. 467, which is the decision here under review. We think there is no question that the Duncan case does overrule the prior decision of the Tax Court in this case on the question of non-recognition of gain or loss on a surrender of indebtedness in exchange for stock. In support of its claim that the indebtedness surrendered by petitioner on the exchange for stock was not property within the meaning of Section 112(b) (4), respondent cites Neville Coke & Chemical Co. v. Commissioner, 3 Cir., 148 F.2d 599, in which it was held that certain short-term notes there in controversy were not property within the meaning of the statute. In that case, it appeared that

a creditor exchanged notes in a reorganization of a debtor corporation for debentures and stock of the reorganized corporation. Petitioner received in place of his notes a new promise by debtor to pay the same amount with interest in the form of debentures having a fair market value equal to petitioner's cost of notes, and, in addition, certain stock of the debtor corporation of a determinable market value. It was held that petitioner had realized a gain in the amount of the fair market value of such stock. The indebtedness had remained in identically the same amount. We are of the opinion that these controlling facts in the Neville case, distinguish it from the controversy before us.

In addition to the contention that the indebtedness in question could not be property within the meaning of the statute, respondent charges that petitioner, in any event, had no property right in the assets of the old corporation at the time of the reorganization. Respondent contends that since the old corporation was insolvent, petitioner's stockholding rights were wiped out. Therefore, it is claimed that the only property rights which petitioner had with respect to the old corporation were rights as a creditor. But, it is declared, creditors step into the shoes of stockholders only when they invoke the process of law to enforce their rights to full priorities and until a court of equity intervenes, creditors are not the owners of the corporate assets.

This argument seems irrelevant. Simply because a corporation may be unable to pay its debts in the ordinary course of business, does not deprive the stockholders of their proprietary interest. If insolvency proceedings take place, then the stockholders' proprietary rights are terminated, and the creditors succeed to such rights and ownership of the corporate assets. If creditors of a corporation do not succeed to the proprietary interest of the stockholders without the institution of insolvency proceedings, the proprietary interest must remain in the stockholders until that eventuality.

No insolvency proceedings took place in this case. Petitioner, as controlling stockholder, still maintained is proprietary interest in the old company. As a creditor, it had a property interest in the old company. Without insolvency proceedings, it would not, as such creditor, be termed as one of the "owners" of the corporate assets. But it is not required to be such an owner, in order to surrender its property interest in the old corporation—the indebtedness which that company owed it—in exchange for stock.

We are of the opinion that petitioner, in surrendering the indebtedness owed to it by the old company in the amount of $300,000.00 and accepting stock of the new company in consideration thereof, exchanged a property right, or property, for stock in the new corporation, in pursuance of the plan of reorganization.

Respondent contends that the exchange relied upon by petitioner did not come within the terms of Section 112(b) (4) for the reason that petitioner did not exchange its property "solely for stock" in the new corporation, as required by the statute. Petitioner's unsecured debt against the old company amounted to $323,993.73. In exchange for stock in the new corporation, petitioner surrendered $300,000.00 of its indebtedness. For the balance of the indebtedness, in the amount of $23,993.73, petitioner received the promissory note of the new corporation. All that petitioner got in exchange for its $300,000.00 claim against the old company was the stock in the new corporation. The note for $23,993.73 was not given by the corporation in exchange for any property, or property right. It was only the continuation of the existence of this amount of indebtedness, which was assumed by the new company. Petitioner exchanged its property solely for stock. It got nothing else in exchange for it.

We come to the contention that under another provision of the statute, Section 112(b) (5), the transaction in question constituted a non-taxable reorganization. This Section provides:

"No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in

control of the corporation, but in the case of an exchange by two or more persons this paragraph shall apply only if the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange."

Congress defined "control" as used in the foregoing section, in Section 112(j), as meaning the ownership of at least 80% of the voting stock and at least 80% of the total number of shares of all other classes of stock of the issuing corporation. According to this definition, petitioner secured control of the new corporation at the time it was organized, within the intendment of the statute.

The application of the above section, as distinguished from Section 112(b) (4), is not dependent upon whether there has been a reorganization, as that 'term is defined in the statute. This section was rather designed as another method of deferring recognition of gain or loss in certain types of corporate readjustments and reorganizations, and to permit deferment of gain or loss where there has been a mere change in the form of ownership, or where the taxpayer has not closed out a losing venture. Its purpose was to permit readjustments without such recognition of gain or loss *by allowing property to be transferred to a controlled corporation by an individual, a partnership, a corporation, or others.* To a certain degree, Section 112(b) (5) and the reorganization provisions overlap. Helvering v. Cement Investors, Inc., 316 U.S. 527, 62 S.Ct. 1125, 86 L.Ed. 1649.

"Thus, a transaction which meets the requirements of clause B or clause C of § 112(g) (1) may also qualify under § 112(b) (5). In short, .the 'reorganization' provisions do not furnish the exclusive methods for securing a deferment of gains or losses arising out of transactions popularly known as corporate readjustments or reorganizations. The instant transaction comes fairly within the family of business readjustments for which § 112(b) (5) was designed. Hence the fact that it cannot meet the statutory standards of a 'reorganization' does not necessarily mean that it cannot qualify as an 'exchange', any more than the failure to satisfy one clause of the 'reorgan-

ization' provisions means that none can be satisfied." Helvering v. Cement Investors, Inc., supra, at page 534, of 316 U.S., at page 1128 of 62 S.Ct.

In order to come within Section 112(b) (5), there was no necessity, as is contended by respondent, that the interest of petitioner in the new company should be in proportion to its interest in the old corporation, nor that there should be any continuity of proportionate interest of any other parties. Here, there was an exchange of property by only one person—that is, the petitioner corporation—and after the exchange for stock, it was the petitioner corporation that was in control of the new company. Questions of proportionate interest arise only in case of an exchange of property by two or more persons, according to the statutory provision in question.

In the present case, petitioner transferred its "property," as we have already construed that term, solely in exchange for stock in the new corporation, and immediately after such exchange, was in control of the new corporation, being the owner of its entire stock.

Here, then, was a bona fide reorganization for purposes of continuing the business which would seem to correspond to the type that Congress had in mind in providing for non-recognition of gain or loss. Many transactions may not qualify as "reorganizations" under the various revenue acts, even though the literal language of the statute is satisfied. Helvering v. Alabama Asphaltic Limestone Co., supra, 315 U.S. at page 182, 62 S.Ct. 540. But in the present case, there was compliance with the requirements which have been found necessary by the Supreme Court in numerous cases, as well as with the language of the statutory provisions themselves. There was a real business purpose for the reorganization. The stockholders of the new company succeeded to the rights of the old company; and this continuity of interest remained unbroken. Moreover, the stockholders in the old company acquired a definite and substantial interest in the new company. Petitioner's money, after the reorganization, was still tied up in the same kind of property as that in which it

was originally invested. There had been no gain or loss in a business sense, but merely the recasting of the same interests in a different form. The transaction was not the closing out of a losing venture, but was one, intended, required, and undertaken to strengthen the financial condition of the business. In addition, there was clearly an exchange of property for stock in the new corporation, and immediately thereafter, the transferor was in control of the new company.

The mere fact that petitioner's interest as creditor of the old company was largely wiped out, and that it emerged primarily in its stockholding capacity rather than a creditor with respect to the reorganized company, does not affect the transaction as one in which gain or loss is not recognizable. In a reorganization, "the relationship of the taxpayer to the assets conveyed was substantially changed, but this is not inhibited by the statute." Helvering v. Minnesota Tea Co., 296 U.S. 378, 386, 56 S.Ct. 269, 272, 80 L.Ed. 284. To constitute "reorganization" within statute exempting from taxation gain resulting from exchange in connection with reorganization, relationship of taxpayer to assets conveyed need not continue substantially unchanged. Miller v. Commissioner, supra. While, in the Miller case, Section 112(b)(3) of the statute was involved, similar considerations were involved as in the present controversy. As already observed, under Section 112(b)(5) where there is no requirement that the exchange be in connection with a reorganization, there is no requirement that there be any continuance of proportionate interest in the new corporation.

It is our conclusion that no gain or loss was recognizable upon the transaction, either as a reorganization under Section 112(b)(4), or as a transfer under Section 112(b)(5); and the decision of the Tax Court to the contrary in this regard should be reversed.

### Second Issue

The second question presented on appeal is concerned with petitioner's claim with respect to a bad debt deduction.

Prior to the taxable year of 1939, petitioner had on its books an account receivable which was owed to it by its wholly-owned subsidiary, referred to herein as a "Sales Company." This account receivable exceeded $2,300,000.00 in amount. In its tax return for the year 1939, petitioner reported to the Commissioner that $2,300,000.00 of that debt had become bad and uncollectible and that it had charged off that portion of the account receivable. Accordingly, petitioner deducted the sum of $2,300,000.00 from its gross income for 1939 and reported its net income for that year as *minus* $88,763.88. The Commissioner disallowed such bad debt deduction. Upon the disallowance of the claimed deduction, and, as a result thereof, the Commissioner assessed a deficiency in the tax for 1939, asserting that petitioner's income for 1939 was $2,257,214.40. Petitioner disputed the assessment, and, after various negotiations, this controversy was settled in the following manner: an agreement was entered into between the Commissioner and petitioner in which it was stipulated that instead of allowing or rejecting in toto the deduction of $2,300,000.00 claimed by petitioner as a bad debt, the Commissioner allowed $938,504.19 of that claim as a bad debt deduction. The balance of the claimed deduction of $2,300,000.00, in the amount of $1,361,495.81, was disallowed. The agreement settling the controversy between the parties set forth that, of the $1,361,495.81 which was disallowed as a bad debt deduction, the amount of $674,390.81 had been disallowed on the ground that petitioner had already availed itself of the losses of its subsidiary, the "Sales Company," to the extent of $674,390.81 in consolidated tax returns filed by petitioner for prior years. This explanation gave the reason for the disallowance of approximately half of the entire sum of $1,361,495.81 which was disallowed as a bad debt deduction. But the agreement between the parties mentioned no reason for the disallowance of the remaining half—$687,105.00—of the total amount disallowed.

Petitioner's 1941 tax return had been filed before the settlement was made with

the Commissioner. Therefore, when petitioner made its 1942 return, it included therein the results of the settlement—that is, the allowance of $938,504.19 (out of the claimed total of $2,300,000.00) as a bad debt deduction. Because the amount of $1,361,495.81 was disallowed as a bad debt deduction, petitioner "restored" this amount to its accumulated earnings and profits account. The Commissioner, in adjusting accumulated earnings and profits at the beginning of the ensuing taxable year, excluded, or deducted, this sum of $1,361,495.81 from such accumulated earnings and profits account of petitioner.[3]

The Tax Court, in sustaining the action of the Commissioner in refusing to allow the restoration of the disallowed bad debt deduction to petitioner's accumulated earnings and profits account, concluded that the claimed bad debt deduction had become worthless in the years preceding petitioner's tax return of 1939, and that it had been disallowed by the Commissioner, not because it was collectible, but because it was not entitled to deduction, having been sustained in some year, or years, prior to the year for which petitioner's tax return was filed.[4] Petitioner claims that since the amount in question, consisting of an account receivable, was disallowed as a bad debt deduction, it was entitled to restore it to its accounts receivable, and that it must, therefore, be considered as a part of its accumulated earnings and profits, for tax purposes.

We are of the opinion that disallowed bad debt deductions may be restored to accumulated earnings and profits only where the debt may remain collectible, and where no deductible loss has been suffered. With respect to that portion of the amount disallowed as a bad debt deduction in the amount of $674,390.81—because petitioner had availed itself of this loss in consolidated tax returns filed for prior years—it necessarily follows that that portion of the debt could not be said to be collectible under any circumstances, and no deductible loss as a result thereof was suffered by petitioner in the taxable year for which it was thereafter claimed as a bad debt deduction. Although a bad debt may be disallowed as a deduction from gross income because it was availed of in consolidated returns of prior years, or occurred in years prior to the taxable year for which the return was filed by the taxpayer, it may, nevertheless, be a recognized loss; and accumulated earnings and profits are to be decreased by such losses. If they are such recognized losses, they may not be restored to accumulated earnings and profits merely because they have been disallowed as bad debt deductions. See Taylor-Wharton Iron & Steel Co., 5 T.C. 768, 780.

Of the remainder of the claimed bad debt deduction in the amount of $687,105.-00 which was disallowed, the Commissioner said nothing. No reason is given in the agreement between the petitioner and Commissioner for the disallowance of this amount as a bad debt deduction, although, as already observed, it was specifically stated therein that the amount of $674,-390.81 had been disallowed because it had been availed of by petitioner in consolidated tax returns for prior years. As stated in the opinion of the Tax Court: "The agreement and the entire record in this case are silent as to the reason for disal-

---

[3] The purpose behind petitioner's effort to restore to its accumulated earnings and profits account, the amount which was disallowed as a bad debt deduction, is to secure a credit in computing excess profits taxes. Under the "invested capital method" (see Sections 714–718, I. R. C., 1940, 26 U.S.C.A. Int.Rev.Code, §§ 714–718), a taxpayer is entitled to a credit in computing excess profits taxes. Accumulated earnings and profits are taken into account in determining "invested capital"; and a percentage of "invested capital" is allowed as a credit in computing the excess profits tax. If the amount disallowed in this case as a bad debt deduction cannot be restored to petitioner's accumulated earnings and profits account, petitioner's credit in computing excess profits tax will be greatly reduced. Hence its concern to restore such amount.

[4] See Title 26, U.S.C.A. Int.Rev.Code, § 23; Mertens Law of Federal Income Taxation, Section 30.19.

lowance of the remaining $687,105 of the total amount not allowed."

■ The foregoing amount could have been disallowed for either of two reasons: (1) That the debt was not wholly worthless and was still collectible; or (2) That it had become a bad debt for some time prior to that tax year. If the amount of the debt had not been worthless and might still, at that time, have been collectible, then the claimed bad debt deduction therefor, upon disallowance by the Commissioner, should properly have been restored to petitioner's accounts receivable. But, as has been said upon petitioner's restoring the total claimed bad debt deduction to its accumulated earnings and profits account, in its 1942 return, the Commissioner excluded this amount from petitioner's accumulated earnings and profits. He would have been correct in this determination if the debt had become bad some time prior to that tax year. The Commissioner's determination is presumptively correct. Moreover, the evidence before the trial court showed that in 1939, petitioner had determined that $2,300,000.00 of the debt in question had become uncollectible; that this amount was charged off its books; and that petitioner deducted it from its 1939 income. We assume the good faith of petitioner in charging the entire amount off its books as a bad debt in 1939. It further appears, from the stipulation of facts upon which the case was heard, that at the time the settlement agreement was entered into between petitioner and the Commissioner in 1942, the petitioner did not expect that the "Sales Company" would ever be able to pay the portion of the bad debt deduction which was disallowed, and that petitioner never expected to collect the disallowed amount from the "Sales Company."

■ Petitioner offered no proofs that the debt in question was collectible in 1939 or later years; and in no way attempted to establish the time, or times, when the loss was sustained. The burden of proving his case is on the taxpayer and many factors necessarily influence the decision of the Tax Court, such as the failure to produce available evidence, although it is to be said that petitioner in this case insists that the evidence is in his favor, and in addition, relies largely on the legal proposition that disallowance of a claimed bad debt deduction entitles such item to be restored to its accumulated earnings and profits. Nevertheless, it is to be said that the foregoing evidence, without more, would be sufficient to sustain a judgment or decision that the petitioner's loss for which the bad debt deduction was claimed, occurred some time prior to the tax year of 1939. Moreover, since the determination of the Commissioner is presumptively correct, it must be sustained where supported by evidence consistent therewith. With respect to petitioner's claim on the legal question, we are of the opinion that contrary to its contention, a bad debt may be properly charged against accumulated earnings and profits, even though it may not be deducted from gross income, for income tax purposes, in the year taken, for some reason other than one which goes to its recognition as a bad debt. It follows, therefore, that the decision of the Tax Court with respect to the bad debt deduction should be affirmed.

From the foregoing, it is our conclusion that, with respect to the first issue in the case, the transaction through which petitioner secured the stock of Kemitex Produts, Inc., was a tax-free transaction, and that the Commissioner's deduction of $296,622.22 from petitioner's accumulated earnings and profits for the tax year of 1941 was erroneous. With respect to the second issue, it is our conclusion that the exclusion of the disallowed bad debt deduction by the Commissioner must be sustained. The decision of the Tax Court on the first issue is, accordingly, reversed; its decision on the second issue, affirmed; and the case is remanded for further proceedings, not inconsistent with this opinion.

SIMONS, Circuit Judge, concurs in the result.

MILLER, Circuit Judge (dissenting, in part).

I am of the opinion that the transaction in 1934 was not one within the provisions of Sections 112(b) (3), 112(b) (4) or 112(b) (5) of the Revenue Act of 1932, which is the applicable statute.

Both Sections 112(b) (3) and 112(b) (4) require that there be a "reorganization" in order for the provisions thereof to be applicable. The transaction does not qualify as a "reorganization" under Section 112(i) of the Act, in that neither the old corporation nor its stockholders were, immediately after the transfer, in control of the new corporation to which the assets were transferred. The creditors of the old corporation, not its stockholders, received the controlling stock of the new corporation. Helvering v. Southwest Consolidated Corp., 315 U.S. 194, 62 S. Ct. 546, 86 L.Ed. 789. See also Helvering v. Alabama Asphaltic Limestone Co., 315 U.S. 179, 183, 184, 62 S.Ct. 540, 86 L.Ed. 775; Adamston Flat Glass Co. v. Commissioner, 4 Cir., 162 F.2d 875; Mascot Stove Co. v. Commissioner, 6 Cir., 120 F.2d 153, 155, 156; Templeton's Jewelers v. United States, 6 Cir., 126 F.2d 251.

Although I am not in agreement with the statement in the Court's opinion that the taxpayer exchanged property solely for stock or securities, yet the ruling on the point involved appears supported by Section 213(f) (1) of the Revenue Act of 1939, 26 U.S.C.A.Int.Rev.Acts, page 1177, which was made retroactive to a time prior to the transaction in question.

I am in accord with the conclusions of the Tax Court (8 T.C. 467) with respect to the non-applicability of Section 112 (b) (5).

The foregoing makes it unnecessary to consider other questions raised and ruled upon in the Court's opinion in its interpretation of these sections of the statute.